Rev. St., of which the provision above quoted constitutes a part, was entirely repealed by chapters 564, 565, Laws 1890, the repeal to take effect in May, 1891. It was provided that existing laws should be continued in force, "modified or amended" so as to conform to the provisions of those chapters. Section 48 of said chapter 564 was substituted in place of that portion of the Revised Statutes heretofore alluded to, and was the law in force and regulating all corporations after it took effect, in May, 1891, and necessarily was in force in September following, the time referred to in the question submitted for decision. It is contended that the substituted provision does not in terms prevent a corporation from making an assignment in contemplation of its insolvency. It reads as follows:

"No corporation which shall have refused to pay any of its notes or other obligations when due, in lawful money of the United States, nor any of its officers or directors, shall assign any of its property to any of its officers, directors, or stockholders, directly or indirectly, for the payment of any debt; and no officer, director, or stockholder thereof shall make any transfer or assignment of its property or of any stock therein to any person in contemplation of its insolvency; and every such transfer or assignment to such officers, directors, or other person, or in trust for them or for their benefit, shall be void."

The point is made that the statute prohibits an officer, director, or stockholder of a corporation from making an assignment of its property, but that it does not prohibit the corporation. Section 8, St. Const. Law, (chapter 677, Laws 1892,) provides that "words in the singular number include the plural, and in the plural number include the singular." Adopting that rule of construction, the statute must be read as prohibiting the officers, directors, or stockholders of a corporation from making an assignment or transfer of its property. Necessarily, therefore, the prohibition includes all the officers, directors, and stockholders. That which all of the officers, directors, and stockholders are debarred from doing, the corporation is in effect prevented from doing, because it can only act through its officers, directors, or stockholders. It would seem to follow that a general assignment made by a corporation through the action of its officers and directors comes within the condemnation of the statute.

<hr>

(4 Misc. Rep. 436.)

THORNE et al. v. FRENCH.

(Superior Court of New York City, General Term.   July 3, 1893.)

1. EQUITY—JURISDICTION—RETENTION AFTER BEING ONCE ACQUIRED.
Where the ostensible object of an action, as shown by the complaint, is to obtain an injunction, and to recover damages for breach of a contract, and the court is unable to conclude until after judicial investigation, as a court of equity, that plaintiffs are not entitled to an injunction, it will retain jurisdiction of the case, and determine the question of damages, and not remand it to that part of the court wherein issues of fact are triable by jury, nor dismiss it, in the absence of any motion to dismiss it, either at the close of plaintiffs' case, or at the conclusion of the trial.

2. CONTRACT TO PRODUCE OPERA—ACTION FOR BREACH.

In such action it appeared that defendant agreed to produce at his theater at a certain time an opera, of which plaintiffs were proprietors, and pay them a certain royalty. Plaintiffs were to furnish certain necessary material by a specified time, previous to its production. For part of such materials, defendant was to "advance" a sum stated. The popularity of an opera on exhibition when such a contract was made, and which plaintiffs' was to follow, exceeded the expectations of all parties, and it was kept on exhibition by defendant much longer than originally contemplated. Defendant did not "advance" such sum, and plaintiffs did not furnish such material at the time agreed on, but they all treated the contract as a continuing one. *Held,* that defendant could not avoid damages for final refusal to produce the opera on the ground that time was of the essence of the contract, and plaintiffs had failed to furnish the materials at the time specified.

3. SAME—CONDITION PRECEDENT.

In such case, plaintiffs could not be put in default until defendant paid or "advanced" the sum agreed on for part of such materials.

Appeal from equity term.

Action by Thomas Pearsall Thorne and Clay M. Greene against Thomas Henry French to enjoin defendant from producing a certain opera at his theater, and for damages for breach of a contract to produce a certain opera, of which plaintiffs are proprietors. From a judgment refusing to grant the injunction, but awarding damages to plaintiffs, defendant appeals. Affirmed.

The opinion of McADAM, J., at the equity term, is as follows:

The plaintiffs are the owners of the opera entitled "The Maid of Plymouth." Thorne being the composer of the music, and Greene the author of the libretto. On June 19, 1891, the parties agreed that the defendant should have and acquire all acting rights in the opera for the United States and Canada during a specified time. That this gave the defendant the exclusive right, is clear, and no negative clause was required to effectuate that purpose. The agreement provides that the defendant shall produce the opera at the Garden Theater, of which he was manager, following the opera then on exhibition there, entitled "La Cigale," which ran until February 13, 1892. Instead of producing the plaintiffs' opera, after February 13, 1892, the defendant permitted Richard Mansfield to produce a repertoire of plays under the defendants' management. The ostensible object of the action, as shown by the bill of complaint, was to obtain an injunction enjoining the defendant from continuing the use of his theater contrary to the covenant with the plaintiffs. It prays for injunctive relief, and damages as well. The defendant, in his answer, objects to the remedy invoked, upon the ground that the plaintiffs have an adequate remedy at law, and an objection of like purport was again taken in limine, at the trial, by a demand that the issues be tried by a jury. While satisfied that the action is not one in which injunctive relief should be granted, that conclusion, not self-evident, was reached only after judicial investigation and consideration. No motion to dismiss was made, either at the close of the plaintiffs' case, or at the conclusion of the trial. The question now is whether the court at equity term should retain the action, and award damages, in such a controversy, or must remand it to that part of the court wherein issues of fact are triable by a jury, or, of its own motion, dismiss the action.

In Van Rensselaer v. Van Rensselaer, 113 N. Y., at page 213, 21 N. E. Rep. 75, the court said: "The case was tried at special term. At the outset the defendants objected to the tribunal as an improper one for the trial of any question involving a personal judgment against either of the defendants, and demanded that if such question was to be tried it should be by a jury trial. The objection was not that the case, as disclosed by the pleadings, was only triable by a jury. It looked not to the case as presented by the complaint,

but as it might possibly be decided at the end. Such an objection is wholly unsound. It conceded that the action, as it came into court, was of an equitable character, as it certainly was, but insisted that, if the final relief was to be a personal judgment, the case was one for a jury. A court of equity does not in that manner lose its jurisdiction, and, having once acquired it, retains it to the end, even though it may turn out that adequate relief is reached by a merely personal judgment. That is not uncommon occurrence." See, also, Lynch v. Railroad Co., 129 N. Y., at page 280, 29 N. E. Rep. 315.

Assuming that the principle declared in the cases cited is applicable here, and that this branch of the court may retain the action, and determine the issues, we proceed to consider the facts: The plaintiffs were to have for their labor certain royalties after the opera was produced, and the agreement provides that if on the 1st day of February, 1892, the defendant shall not have already produced said opera, he shall pay to the plaintiffs the sum of $2,000, which shall be in full payment for the first fifty performances to be given by him. The bill as to injunctive relief is not insisted upon, and the contention has finally resolved itself into an effort to recover the specific sum. The main defense is that the contract called for the delivery by September 1st of the materials to produce the opera viz.: Band parts, leader's score, twenty or more vocal scores, also diagrams of both scenes, and the plates of all costumes for principals and chorus; also, cuts, drawings, or designs of all properties. The plaintiffs failed to perform this provision of the contract, and it is claimed that, as a consequence, no action by them will lie for a breach of the defendant's agreement to pay. But strict performance of this provision was waived by the defendant. For the drawings, the defendant was to advance $200, which was to be deducted from the first fees due to the plaintiffs under the contract.

The meaning of the term "advance" is that the defendant was to pay $200 before it would otherwise have become due. Webster's Dictionary. The defendant never paid or advanced any part of this money. It was a condition precedent on his part, and the plaintiffs could not be put in default until such sum was first advanced. Mansfield v. Railroad Co., 102 N. Y. 205, 6 N. E. Rep. 386; Dannat v. Fuller, 120 N. Y. 554, 558, 24 N. E. Rep. 815. The band parts, leader's score, and a number of the vocal scores had been prepared, and were ready for delivery, and libretto was complete. Indeed, they were used at rehearsals even before the date of the contract. The additional material involved merely the mechanical work of copying and designing, which would have taken but a few days to complete. Conceding that time was of the essence of the contract, and there was no waiver in respect thereto, the defendant had the right (1) to elect to rescind the contract for failure to deliver the materials on or before September 1, 1891; or, (2) to elect to continue the contract in force. The plaintiffs, by their simple failure to deliver the materials, did not put an end to the contract, although their default might have given the right to the defendant to elect to rescind. If he elected to rescind, it was incumbent on him to make his choice promptly. See Lawrence v. Dale, 3 Johns. Ch. 23, 42; McNevin v. Livingston, 17 Johns. 437; Hunt v. Singer, 1 Daly, 209, affirmed 41 N. Y. 620; Meyer v. Hallock, 2 Rob. (N. Y.) 284; Starbird v. Barrons, 38 N. Y. 230, 237; Hennessy v. Bacon, 137 U. S. 78, 11 Sup. Ct. Rep. 17. The defendant did not elect to rescind, however, but determined to continue the contract in force.

The opera of "La Cigale" had proved a great success, and defendant was in no hurry to withdraw it from the public; and, as the "Maid of Plymouth" was to be produced at the same theater, it could not be accommodated until "La Cigale" had been withdrawn, and hence there was seemingly no hurry on either side in asserting rights, making demands, or pressing tenders. Feeling this way, and acting accordingly, the defendant wrote Mr. Thorne, under date of September 5, 1892, (five days after the alleged default:) "Your favor of September 3d to hand. I shall be glad to see you when you get here, which will be in ample time for the band parts." The defendant's letter refers only to the "band parts," and it is urged that the waiver applies to

nothing. else.  The contract was entire and indivisible, and the defendant thus knew of the failure to deliver the other material.  He did not complain of delay, take the position that the plaintiffs were in default, or that the contract was at an end.  On the contrary, there was, as he expressed it, "ample time."  Conversations were had between the parties after this,—one as late as January, 1892, in which the defendant said that the plaintiffs had better read their contract; they would get their $2,000, but he expected the material.  By electing to continue the contract in force, the defendant retained his rights under it until September 1, 1893.  He evidently intended to regard the contract as a subsisting obligation, and one that might ultimately prove beneficial to him.  A defendant is not bound to take advantage of a delay or forfeiture, and there may be a waiver, if there be conduct indicating an intention to waive a condition as to time, "although there are no new considerations, and although there may be no technical estoppel."  Prentice v. Insurance Co., 77 N. Y. 483, 488; Goodwin v. Insurance Co., 73 N. Y. 480, 493; Titus v. Insurance Co., 81 N. Y. 410; Sinclair v. Tallmadge, 35 Barb. 602, 606.  Where time is waived a party is not put in default until he has demanded performance, and thus restored time as an element of the contract. Lawson v. Hogan, 93 N. Y. 39, 41; Wallman v. Society, 45 N. Y. 485; Leaird v. Smith, 44 N. Y. 618; Owen v. Evans, (N. Y. App.) 31 N. E. Rep. 999; Dillon v. Masterson, 42 N. Y. Super. Ct. Rep. 176.  When the parties entered into the agreement they contemplated that "La Cigale" would soon come to a close, and "The Maid of Plymouth" follow it, and it, in turn, was to be followed by Richard Mansfield.  The defendant was at this time anxious to secure the plaintiffs' opera.  The agreement so recites, and all the circumstances point to the same fact.  But "La Cigale" continued its hold on the favor of the public much longer than was expected.  The success continued until the advertised time for Richard Mansfield to make his appearance came around, and there was no longer room for the "Maid of Plymouth." The play was not then wanted; it had been crowded out by the circumstance stated; and thus it was that the defendant in January, 1892, finally announced his determination not to produce it at all.  This was a complete change of front on the part of the defendant, and a surprise to the plaintiffs. That the plaintiffs were anxious to carry out their part of the contract is apparent all through the case.  They did not want to crowd the defendant, or even appear to do so, but they never intended to abandon their contract, or relieve the defendant from its obligations.  There was substantial performance on the part of the plaintiffs, and, but for the acts of the defendant, there would have been literal performance.  Certain legal results follow the defendant's acts:  (1) Where a party gives a reason for his conduct or decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and different consideration.  He is not permitted to mend his hold.  He is estopped from doing it by a settled principle of law.  Railroad Co. v. McCarthy, 96 U. S. 258, 267.  And see Gould v. Banks, 8 Wend. 562; Holbrook v. Wight, 24 Wend. 169; Everett v. Saltus, 15 Wend. 474; Wright v. Reed, 3 Term R. 554; Duffy v. O'Donovan, 46 N. Y. 223; Winter v. Coit, 7 N. Y. 288.  Next, when the defendant finally announced that he would not produce the opera at any time, the plaintiffs were absolved from the necessity of any formal tender or offer of performance on their part.  Shaw v. Insurance Co., 69 N. Y. 286; Gray v. Green, 9 Hun, 334; Carter v. Scargill, L. R. 10 Q. B. 564, 567.  That the defendant was not put in default promptly by a formal tender was no doubt owing to the fact that the plaintiffs wanted their opera produced, and by the defendant at his theater.  These were paramount considerations. They preferred this to a forfeiture of any kind.  It was understood by the parties (all professional men) that, until "La Cigale" was formally announced to be withdrawn after a certain date, there was no hurry about the plaintiffs' opera, or its accompaniments.  Time was not, therefore, regarded by either party as of the essence of the contract.  Indeed, viewed in the light of the circumstances all the parties knew that it was not and could not be so regarded; and they acted on this interpretation of the agreement until the defendant formally announced his intention not to perform any portion of it on

his part, except that, perhaps, relating to his obligation to pay the $2,000 specified in it. In actions at law, though not in equity, time is regarded as of the essence of the contract, (Schmidt v. Reed, 132 N. Y., at page 113, 30 N. E. Rep. 373; Chit. Cont. [11th Amer. Ed.] 433,) yet where time does not go to the root of the matter, and the acts of the parties evidence, as they do here, the fact that it is not to be regarded as of the essence of the contract, it will violate no legal principle to give effect to the evident intention of the parties,—a feature that controls the interpretation of all contracts. This principle was carried to great lengths in Bettini v. Gye, 1 Q. B. Div. 183, in which the contract provided that Bettini, a singer, should be in London, "without fail," at least six days before the commencement of his engagement, for the purpose of rehearsals. The plaintiff did not arrive in London until two days before the engagement. The defendant, Gye, an opera manager, sought to escape liability under the contract upon the plea that time was of the essence, but Mr. Justice Blackburn ruled that the plaintiff was entitled to judgment. The decision in this case is not put on that ground, but upon the more substantial one of waiver by the defendant, which, under the evidence and the authoritative adjudications on the subject, relieve the plaintiffs from all imputation of neglect or default. The plaintiffs are entitled to judgment for $2,000, with costs.

Argued before FREEDMAN and GILDERSLEEVE, JJ.

Dittenhoefer & Gerber, for appellant.
Seward, Guthrie, Morawetz & Steele, for respondents.

PER CURIAM. The judgment should be affirmed, with costs, upon the opinion of the learned judge at the equity term.

---

(4 Misc. Rep. 517.)
STEPHENS v. PAGE et al.

(Common Pleas of New York City and County, General Term. August 9, 1893.)

SUPPLEMENTARY PROCEEDINGS—AGAINST WHOM MAINTAINED — CORPORATIONS.
    In New York, supplementary proceedings cannot be maintained against a foreign corporation having no place of business within the state.

Appeal from third district court.

Action by George W. Stephens, as receiver of the McCall Publishing Company, a foreign corporation, against Arthur H. Page and Joseph H. Ringot, to recover the assets of such company, for the purpose of applying the same on an execution in favor of Walter Logan. Logan procured an order for the examination of such corporation in proceedings supplementary to execution, and, at the close of such examination, plaintiff was appointed receiver. One of the defenses interposed is that plaintiff has no capacity to sue, and that the court had no power or jurisdiction to appoint plaintiff, on the ground that such proceedings are not authorized against foreign corporations. From a judgment for plaintiff, defendants appeal. Reversed.

Argued before BISCHOFF and GIEGERICH, JJ.

A. A. Michell, for appellants.
E. J. Tinsdale, for respondent.

GIEGERICH, J. The principal question presented by this appeal is, can a foreign corporation, not having a place of business