## LIABILITY FOR INNOCENTLY MAKING FALSE REPRESEN-
## TATIONS AS TO VALUE.

Court of Appeals for Hamilton County.

Lizzie Gaisser v. John Hansen et al.*

Decided, October 23, 1915.

*Bank Stock—Given in Exchange for Property—Unexpectedly Proves Worthless Soon Thereafter—Action for Rescission of the Contract— Liability for False Representations Innocently Made—Defendant Given the Option of Making the Vendor Good or Submitting to a Rescission.*

1. Under the rule that one who obtains the property of another through untrue statements, though in ignorance of their falsity, must be held responsible for a legal fraud, the defendant in the present case is required to make good to plaintiff the amount of loss sustained by her by reason of her reliance on representations made by him as to the value of certain bank stock given to her in part payment for real estate.

2. In an action for rescission of a contract for sale of real estate and reconveyance of the property to plaintiff, on the ground of misrepresentation as to value, a court of equity, upon finding that the misrepresentations were made as to a material fact and not as an expression of opinion will give the defendant the option of making the plaintiff whole as to the amount lost by reason of such misrepresentations or a reconveyance of the property upon receiving the return of the consideration.

*Herrlinger & Dixon* and *Healy, Ferris & McAvoy,* for plaintiff.

*Frank H. Kunkel,* contra.

Gorman, J.

This case is here on appeal from the judgment of the court of common pleas.

It appears from the record in the case that the plaintiff, prior to March 27, 1912, was the owner in fee simple of certain real

*Motion to require the Court of Appeals to certify its record in this case overruled by the Supreme Court, February 29, 1916.

estate known as No. 1015 Main street, in the city of Cincinnati,
which she was willing to sell for $14,000, and had offers to pur-
chase the property, but not at this price. The defendant John
Hansen had been her tenant for a long time in a part of the
premises, and her brother, E. William Oesper, the other defend-
ant, occupied an office in a part of the building for several years
prior to said date.

Hansen, learning that the plaintiff was willing to sell her
property, asked that he have the first refusal or option on the
property, and proposed to pay therefor $11,000 in cash. After
plaintiff had agreed to accept $11,000 in cash, Hansen proposed
verbally to plaintiff's brother that he have the privilege of turn-
ing over to plaintiff certain stocks and a certain amount of cash,
and give his note secured by mortgage on the property which
he proposed to purchase, for the balance. He proposed this be-
cause he said he had not sufficient cash and that these stocks
would be the equivalent of cash.

This plaintiff had known the defendant Hansen for many
years, and she and her brother were on the intimate terms usually
existing between brother and sister. She had great confidence in
her brother and also had confidence in Hansen, her tenant. After
her brother had talked to her, she agreed to sell the property and
receive in payment the stock, money and note and mortgage
above mentioned, upon Hansen's representation that the stocks
were the equivalent of cash.

It appears that her brother thereupon prepared a paper for
her to sign, in form making the proposal to sell come from her,
whereas the proposal to buy came from the defendant Hansen.
The following is the proposal:

"I, the undersigned, authorize E. W. Oesper to sell my house
and lot No. 1015 Main street, Cincinnati, Ohio, for the sum of
eleven thousand ($11,000) dollars on the following terms, to-
wit, to take the following stock in part payment:

"16 shares 2d National Bank stock to value of ....$  3,760
16 shares U. S. Printing to value ................  1,456
Cash .......................................  1,084
                                              _____
                                              $6,300

"The balance the purchaser to give mortgage on this property to run 5 years at 6% interest, the purchaser to have the privilege of paying $500 at any time. I will pay the taxes due in June, 1912, to the amount of $72. All other taxes and assessments to be paid by the purchaser.

"(Sgd.)     LIZZIE GAISSER.

"I accept the above proposition.
"(Sgd.)     JOHN HANSEN."

The evidence tends to show that this paper was signed on or about March 27, 1912, although the negotiations were carried on for perhaps a week prior to that time. It further appears that during the negotiations, either before or at the time this proposition was signed by the plaintiff, her brother assured her that the stock of the Second National Bank was good, that he had bought some himself. Hansen told her the stock was worth $235; that he had paid $235 for it, and it was worth that and he was putting it in at $235 to her. The evidence discloses that she knew nothing about the value of the stock and that she relied upon the representations of Hansen and her brother. She had a right to rely upon the representations of Hansen in view of his friendly relations and long acquaintance with her, and she had a right to rely upon the representations of her brother as to the value of the stock.

After the agreement was entered into it was consummated by the conveyance to the defendant Hansen of the premises by Mrs. Gaisser. Hansen delivered to Mrs. Gaisser sixteen shares of Second National Bank stock, sixteen shares of United States Printing Company stock, paid her $1,084 in cash, and executed and delivered his note and mortgage for $4,700 in accordance with the terms of the agreement. She placed the stock in a box of the Second National Bank, and in less than three weeks from the date of the consummation of the transaction the Second National Bank was known to be hopelessly insolvent, its entire capital stock and the greater part of its surplus wiped out under the orders of the Comptroller of the Currency and an assessment of one hundred cents on the dollar was then levied against the stockholders.

The evidence tends to show that at the time this agreement was entered into, March 27, 1912, this stock was worth about five dollars per share, or the entire sixteen shares were worth about eighty dollars. We think the evidence tends to show that Hansen believed the stock to be worth $235 when he bought it and when he put it in to Mrs. Gaisser at that price. The evidence does not disclose that Hansen had any fraudulent intent in representing the stock to be worth $235 per share, but he honestly believed it to be worth that, and it is probable that Oesper, the brother of plaintiff, believed the stock to be worth something in the neighborhood of $235, although he himself had bought the stock some time before at $210. The evidence discloses that Oesper was anxious to consummate this sale. He was to get a commission from his sister on the sale. He was on friendly terms with Hansen and anxious to please him.

As soon as the plaintiff discovered that the stock was practically worthless, she tendered it back, together with the United States Printing Company stock and the cash she had received and the note and mortgage, and offered to cancel the mortgage, and she also asked for a reconveyance of the real estate. In other words, she rescinded the contract in so far as she could, as promptly as it could be done after the discovery of the fact that the Second National Bank stock was almost valueless. Hansen having refused to make a reconveyance, this action was brought praying for a rescission of the contract and a reconveyance of the real estate.

We shall not undertake to analyze the evidence but the statement above made substantially represents the facts necessary to be set out in the consideration of the legal questions involved.

It is claimed by the plaintiff that the representation by Hansen that the Second National Bank stock was worth $235 is tantamount to a guaranty that the stock was worth that amount; whereas it is claimed by the defendant Hansen that he acted in good faith and without any fraudulent motive or intent, and that he honestly believed the stock to be worth the amount which he said it was worth, and furthermore that it was but an expression of his opinion as to the value of the stock, and there-

fore the representation did not amount to a guaranty and a rescission should not be awarded.

We are of the opinion that the statement made by Hansen as to the value of the stock was not an expression of an opinion, but was a statement of fact as to the value, and that he must be held to the value which he placed upon this stock. The consequences to Mrs. Gaisser, the plaintiff, were just as disastrous as though Mr. Hansen had knowingly made a false statement as to the value of the stock. Her loss was just as great as though he had falsely and fraudulently represented the stock to be of the value of $235. He had no right to make a representation of this character to her, unless he knew the stock to be of the value which he put upon it. As was said by Judge Cooley in the case of *Converse* v. *Blumrich*, 14 Mich., 109, at page 123:

"The courts must look at the effect of untrue statements upon the person to whom they are made, rather than to the corrupt motive of the one making them. If one obtains the property of another by means of untrue statements, though in ignorance of their falsity, he must be held responsible as for a legal fraud." See also, *Holcombe* v. *Nobbe*, 69 Mich., 396.

In *Mulvey* v. *King*, 39 O. S., 491, which was an action at law and not one in equity, the court on page 494 employs this language:

"It may be considered as well settled in this state, by the cases above cited" (26 O. S., 428; 33 O. S., 283; 15 O. S., 145), "that an action for damages caused by misrepresentation can not ordinarily be maintained, without proof of actual fraud, or such gross negligence as amounts to fraud. When, however, a person claims the benefit of a contract into which he has induced another to enter by means of misrepresentations, however honestly made, the same principles can not be applied. It is then only necessary to prove that the representation was material and substantial, affecting the identity, value or character of the subject-matter of the contract, that it was false, that the other party had a right to reply upon it, and that he was induced by it to make the contract, in order to entitle him to relief either by rescission of the contract or by recoupment in a suit brought to enforce it."

Now in the case at bar the defendant Hansen is seeking to hold the benefit of a contract entered into between himself and Mrs. Gaisser. This is an action in equity, and whatever may be the rule at law with reference to actual fraud, we apprehend that it will not be denied that in equity it is not necessary that the fraudulent intent be shown in order that a court of equity may grant relief to a complainant against consequences which result from a mis-statement of fact by a person who secures a benefit or advantage thereby. In this case the representation as to the value of this stock was material. It is not probable that Mrs. Gaisser would have sold her property for $3,760 less than $11,000. It is not probable that she would have taken the stock of the Second National Bank at $235 per share had she known that it was practically worthless. So there can be no question but that it was a material representation, nor can there be any question but that it was false, although not known to be false by Mr. Hansen. Nor can it be questioned that Mrs. Gaisser relied upon the representation made by Hansen; and from her acquaintance with Hansen and her relations towards him she had a right to rely upon his representations. So that we think the rule laid down in *Mulvey* v. *King* is not only a sound rule as applied to a legal case, but also a much sounder rule when applied to a case in equity.

It can not be claimed, we think, that Hansen's statement as to the value of this stock was an expression of opinion. He did not put it as an expression of opinion, but as a statement of fact, and it will be found that the cases in which a person is permitted to express an opinion and not be held liable, present quite a different situation from the case in which a person makes a representation of fact on which another relies and has a right to rely and which is material to the transaction.

We have come to the conclusion in this case that if the parties can be put *in statu quo* this court should grant a rescission of this contract, but we are not prepared to say that the parties can be restored to the situation in which they were at the time this contract was executed. It is quite probable that the value of this real estate has increased since the sale was made, and a

rescission of this contract would give the benefits of this enhanced value to the plaintiff and deprive the defendant of this advantage when he had no intention of committing a wrong. We are of the opinion, therefore, that the defendant should be given the option of accepting a decree of rescission, or a decree allowing the plaintiff compensation for the loss which she has sustained on the Second National Bank stock.

There is evidence tending to show that the real value of this stock on the 27th of March, 1912, the time this contract was entered into, was about $5 per share according to the books. This is the testimony of Mr. Gutting, the assistant cashier of the bank. We are not speaking now of the market value of the stock, because there is no evidence of sales having been made about the time this contract was entered into. Furthermore, it is not a question of what was the market value of the stock under the representations made, but what was the real value of this stock. Mrs. Gaisser had a right to expect $11,000 or the equivalent thereof for her property. She though she was getting the equivalent of $11,000, and she was justified in believing this on the representations of Mr. Hansen. We find, therefore, that in this case there should be a rescission of this contract, unless the defendant Hansen is willing to compensate Mrs. Gaisser for the loss she has sustained because of his misrepresentation as to the value of the Second National Bank stock. If Hansen is willing to compensate her to the extent of $3,680, which is the difference between the actual value of the stock and the value as represented by Hansen, a decree may be entered accordingly; otherwise, a decree may be entered rescinding the contract.

We are of the opinion that this course is warranted by this court sitting as a court of chancery, under the authorities. Section 237, Pomeroy's Equity Jurisprudence, 3d Ed., 342:

"If a court of equity obtains jurisdiction of a suit for the purpose of granting some distinctly equitable relief, such, for example, as the specific performance of a contract, or the rescission or cancellation of some instrument, and it appears from facts disclosed on the hearing, but not known to the plaintiff when he brought his suit, that the special relief prayed for has

become impracticable, and the plaintiff is entitled to the only alternative relief possible of damages, the court then may and generally will, instead of compelling the plaintiff to incur the double expense and trouble of an action at law, retain the cause, decide all the issues involved, and decree the payment of mere compensatory damages.''

In 24 Am. & Eng. Encyclopedia of Law, 2d Edition, page 616, we find a correct statement of the law as we understand it:

''Although in a given case a court of equity refuses to grant rescission of a contract procured by fraud, because this relief under the circumstances would be inequitable, still as the court has jurisdiction of the cause for the purpose of granting purely equitable relief, it may proceed to do complete justice between the parties by making such a decree as the merits of the case will warrant, and thus it may give damages for the fraud, although this relief is purely legal.''

In support of this proposition see the following cases: *Betts* v. *Gunn,* 31 Ala., 219; *Shaffeer* v. *Sleave,* 7 Blackf. (Ind.), 184; *Carroll* v. *Rice,* Walk. (Mich.), 374; *Holland* v. *Anderson,* 38 Mo., 55; *Grymes* v. *Sanders,* 93 U. S., 55; *Thorne* v. *French,* 4 Mis. Rep. (N. Y.), 436; *McDaniel* v. *Lee,* 37 Mo., 204.

A decree may be entered in this case in accordance with these conclusions.

JONES (E. H.), P. J., and JONES (Oliver B.), J., concur.