FENSTERMAKER, APPELLEE, *v.* ELWOOD, APPELLANT, ET AL.

(No. 5-83-34—Decided July 30, 1984.)

*Firmin & Sprague Co., L.P.A., Thomas P. Kemp* and *Stephen A. Roepke,* for appellee.

*Tudor, Cloud & Cesner, Robert E. Cesner, Jr.,* and *Keith A. Lange,* for Randy J. Elwood.

*Drake, Phillips, Kuenzli & Clark, William E. Clark, Michael Gibson* and *David P. Kuenzli,* for Snyder-Koehler Realty, Inc.

WHITESIDE, J. Defendant, Randy J. Elwood, appeals from a judgment of the Hancock County Court of Common Pleas and raises four assignments of error as follows:

"I. The trial court erred in granting a judgment for damages in favor of the plaintiff, where plaintiff elected recision [*sic*] as his sole and only remedy.

"II. The trial court erred in granting plaintiff a money judgment for damages upon his complaint under the theory of promissory estoppel, for the reason that neither equitable estoppel nor promissory estoppel can constitute the basis for recovery by a plaintiff who alleges damages by virtue of fraudulent misrepresentation. Furthermore, the judgment for plaintiff cannot be sustained under the evidence in this case upon the basis of either estoppel or fraud.

"III. The court erred in granting judgment against defendant in the amount of twenty thousand four hundred dollars ($20,400.00) for the reason that the record of the trial does not support the amount of damages awarded.

"IV. The court erred in setting off the promissory note of the defendant and not awarding the liquidated sum with pre-judgment interest."

Plaintiff, John H. Fenstermaker, also filed a notice of appeal from the judgment, apparently from that portion thereof granting judgment in favor of defendant Snyder-Koehler Realty, Inc., and plaintiff attempted to assert an assignment of error in that regard, which cross-appeal this court *sua sponte* dismissed for failure of plaintiff to file a timely brief in support thereof.

In its opinion and judgment entry, the trial court made specific findings of fact substantially as follows:

"(1) On or about September 25, 1980 Elwood, as seller, and Fenstermaker, as buyer, entered into a written agreement whereby Elwood agreed to sell to Fenstermaker and Fenstermaker agreed to buy from Elwood that portion of Elwood's business as a Marathon Oil Distributor known as the Dunkirk route for Fifty Nine Thousand Dollars ($59,000.00) with Fifty Thousand Dollars ($50,000.00) being paid on September 25, 1980 and the balance of Nine Thousand Dollars ($9,000.00) payable on or before September 25, 1982 plus interest with a payment of Four Thousand Dollars ($4,000.00) due on or before September 25, 1981. The parties agreed to allocate the purchase price in the following manner:

"Truck and tank Fifteen Thousand Dollars ($15,000.00).

"All other equipment Twenty Thousand Dollars ($20,000.00).

"Good will Twenty Four Thousand Dollars ($24,000.00).

"(2) Snyder-Koehler, an Ohio Real Estate broker, was retained by Elwood for the purpose of offering for sale, negotiating for sale, and the sale of the Dunkirk route and upon completion of said sale, Elwood paid Snyder-Koehler Realty, Inc. for their [*sic*] services.

"(3) The evidence establishes the Dunkirk route was sold to Fenstermaker on the basis of a projected four hundred fifty thousand gallon (450,000) sale per year. The evidence further establishes that at no time was there a refusal to divulge any information concerning said route to the purchaser Fenstermaker, who in fact at one meeting had an accountant with him.

"* * *

"(5) Fenstermaker began operating the route the end of September of 1980 and on November 3, 1981 filed this action, the major thrust of which was that it was represented to him by Elwood and through Snyder-Koehler Realty, Inc., that the total yearly sales for the Dunkirk route were four hundred fifty thousand gallons (450,000) when in fact the total yearly sales were one hundred seventy eight thousand three hundred nine gallons (178,309).

"(6) Fenstermaker at the time of trial elected to proceed on the remedy of recision [sic].

"(7) The evidence establishes promissory estoppel, to-wit: (1) Representations by Elwood which (2) Elwood should reasonably expect to cause Fenstermaker to change his position and (3) which did cause Fenstermaker to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the representations. See 4 POF 2d 641.

"(8) Damages may be determined by the plaintiff's expenditures or change of position in reliance as well as by the value to him of the promised performance, however, they should be only such as, in the opinion of the Court, are necessary to prevent injustice. In determining what justice requires, the Court must remember all of its powers, derived from equity, law merchant, and other sources as well as the common law. Its decree should be molded accordingly. 1A Corbin, Contracts, p. 221 sec. 200.''

The gist of plaintiff's case is that defendant Elwood falsely represented that the Marathon Oil route he was selling to plaintiff Fenstermaker was at the time of the sale a 450,000 gallon-per-year route, whereas, in fact, total yearly sales were only 178,309 gallons. Plaintiff sought to rescind the contract and recover that which he had paid, but the trial court found rescission not to be appropriate and, instead, awarded damages upon the theory of promissory estoppel.

The issue raised by the first assignment of error is whether plaintiff irrevocably waived any possible right to damages for defendant Elwood's wrongful acts, whether predicated upon fraud or breach of contract, by virtue of an express election by plaintiff at the trial to seek the remedy of rescission.

The doctrine of election of remedies has been modified substantially by the Civil Rules, including Civ. R. 8(A), which permits pleading for relief in the alternative, or of different types, and Civ. R. 54(C), which provides that the demand for judgment is a limitation only where there is a judgment by default, except that no money judgment may exceed the demand, unless amended at least seven days before trial. Nevertheless, it is unnecessary to determine the extent to which the doctrine of election of remedies has been modified since application of that doctrine would not preclude judgment for plaintiff for damages whether predicated upon fraud or breach of contract.

As a general rule, a party who has *unsuccessfully* attempted to rescind a contract for fraud through an action for rescission is not barred by the doctrine of election of remedies from thereafter resorting to an available legal remedy such as an action for breach of contract or for damages for fraud. See 25 American Jurisprudence 2d (1966) 669,

Election of Remedies, Section 27; and Annotation (1939), 123 A.L.R. 378. That this is the rule followed in Ohio is well set forth in the tenth and eleventh paragraphs of the syllabus of *Norwood* v. *McDonald* (1943), 142 Ohio St. 299 [27 O.O. 240], in which the Supreme Court held:

"10. Where a plaintiff obtains a judgment granting him one of two alternative or mutually exclusive remedies for the assertion of the same right or the same relief, he is precluded from thereafter maintaining an action based on the other remedy; but where a judgment is for the defendant in a suit based upon one of two mutually exclusive remedies, the plaintiff is not precluded from thereafter maintaining an action based on the other remedy.

"11. A plaintiff's choice of a fancied remedy which never existed and the futile pursuit of it because of a mistake as to the facts or the law, though the first action proceeds to judgment, does not preclude such plaintiff from thereafter invoking a proper remedy, in the absence of facts which create an estoppel."

See, also, *Frederickson* v. *Nye* (1924), 110 Ohio St. 459; and *Singer* v. *Scholz Homes, Inc.* (1973), 36 Ohio App. 2d 125 [65 O.O.2d 141].

As plaintiff points out, it was held in *Gaisser* v. *Hansen* (1915), 25 Ohio C.C. (N.S.) 262, that, under appropriate circumstances, in an action for rescission upon the ground of misrepresentation, the court may afford the defendant the opportunity to make the plaintiff whole by responding in damages, rather than by rescinding the transaction. The trial court may well have adopted this course in this case in response to defendant Elwood's cogent argument that rescission would be unfair under the circumstances since the Marathon Oil route had been operated by plaintiff for some time and could not be returned in the identical condition in which it was re-

ceived by plaintiff. In any event, plaintiff is not precluded, by his having sought rescission, from obtaining damages instead of rescission where the trial court finds rescission not to be the appropriate equitable remedy for defendant's wrongdoing and awards damages instead. The first assignment of error is not well-taken.

The second assignment of error pertains to the trial court's determination of liability predicated upon what that court termed promissory estoppel. Defendant Elwood contends that such a finding is not appropriate where the plaintiff alleges damages by virtue of fraudulent misrepresentation and that the evidence does not support a finding of either estoppel or fraud.

There is ample evidence to support a finding that defendant Elwood misrepresented the Marathon Oil route he was selling plaintiff Fenstermaker as being a 450,000 gallon-per-year route, whereas, in fact the route would produce sales of only slightly in excess of 178,000 gallons per year. Plaintiff Fenstermaker, defendant Snyder-Koehler's agent, Reasner, and plaintiff's accountant witness, Peters, each specifically testified that defendant Elwood during negotiations expressly stated that the route he was selling to plaintiff had been producing sales of 450,000 gallons per year. This was also expressly stated upon the listing sheet which Reasner gave to plaintiff, which contains the words "450,000 gallon yearly route," from which is computed, "current gross yearly income," of $42,350 [*sic*], predicated upon 8.3 cents per gallon profit. Reasner testified that these figures were given to him by defendant Elwood, who indicated that he had a route to which he was adding customers to make it a 450,000-gallon route. This is also the import of the testimony of defendant Elwood's accountant, Lishawa, who predicated a statement of expected return on invest-

ment from the route upon sales of 450,000 gallons per year, and which statement both Lishawa and Elwood presented to plaintiff in the course of the negotiations for the sale. Lishawa also testified that he obtained his figures from defendant Elwood, and, while there is no such indication in Lishawa's statement, defendant Elwood indicated the gallonage was "projected." Lishawa's letter addressed to defendant Elwood does state:

"The data used in these studies were supplied by you or taken from unaudited financial statements. We do not offer any assurance that these results can be achieved."

This is only an accountant's disclaimer, indicating that defendant Elwood supplied the information, not a disclaimer by defendant Elwood.

Only defendant Elwood contended that the 450,000-gallon figure was a "projection," which he explained, at trial, as being what the route "was possible of doing from my knowledge in the oil business." He admitted furnishing this figure to Reasner and inconsistently stated that use of the 450,000-gallon figure in the listing sheet was not incorrect, although he denied telling plaintiff that the route was a 450,000-gallon annual route. Defendant Elwood also admitted that his records were kept in terms of dollar volume, rather than gallonage, and that he did not separate his records between the route he was selling and another route he operated. The evidence indicates that, from his total business on the two routes, defendant Elwood could have created and sold a route having business of 450,000 gallons per year. Defendant Elwood admitted that the route he sold had been doing substantially less than that amount of business.

By finding number seven, *supra*, the trial court found that Elwood made representations which he should have expected to, and did, cause plaintiff to

change his position to his detriment. The trial court further expressly found that plaintiff was justified in relying upon the representations which the trial court referred to as promise. By paragraph four of the order portion of the opinion and judgment entry, the trial court indicated a finding that the true gallonage of the route defendant Elwood sold plaintiff was only 178,309.

For whatever the reason, the trial court chose not to stigmatize defendant Elwood with a finding of fraud or misrepresentation but, instead, to bind defendant Elwood to his gallonage representation by making the gallonage representation a condition of the contract through the doctrine of promissory estoppel. The two doctrines are similar and will often achieve the same result where damages, rather than rescission, is the appropriate remedy, although a breach of contract may also justify rescission or termination of a contract. In this case, utilization of the doctrine of promissory estoppel to create a condition of the contract which was breached achieves the same general result as the benefit-of-the-bargain rule for measuring damages in an action involving a sale of property induced by false representations. See *Molnar* v. *Beriswell* (1930), 122 Ohio St. 348; and *Gray* v. *Gordon* (1917), 96 Ohio St. 490. The trial court gave plaintiff the benefit of the bargain by utilizing promissory estoppel to create a condition of the contract that the route being sold had an annual volume of 450,000 gallons and then awarded damages to plaintiff because defendant delivered only a route having 178,000 gallons in annual sales. See 1 Restatement of the Law 2d, Contracts (1981) 242, Section 90.

In effect, the trial court transformed defendant Elwood's representation into a promise which was then made a part of the contract. Even if this be error, we find no prejudice resulting to defendant Elwood, in light of the findings of the

trial court, which are supported by evidence.

Generally, there are five elements that must exist to maintain an action for fraud: "* * * (1) a false representation; (2) knowledge of the falsity on the part of the person making the representation; (3) intent to mislead others in relying upon the representation; (4) reliance, with a right to do so, upon the misrepresentation by the party claiming injury; and (5) injury resulting from that reliance." *Schwartz* v. *Capital Savings & Loan Co.* (1978), 56 Ohio App. 2d 83, 86 [10 O.O.3d 117]. See, also, *Greenwalt* v. *Goodyear Tire & Rubber Co.* (1955), 164 Ohio St. 1, 6 [57 O.O. 57]; *Friedland* v. *Lipman* (1980), 68 Ohio App. 2d 255 [22 O.O.3d 422], paragraph one of the syllabus; and *Klott* v. *Associates Real Estate* (1974), 41 Ohio App. 2d 118, 120-121 [70 O.O.2d 129]. Sometimes six, rather than five elements are mentioned, the sixth being that the misrepresentation is of a material fact. Also, it is not necessary that the person making the misrepresentation actually knew that the statement was false where he makes a positive statement and the circumstances are such that the person making the statement should have known whether it was true or false. *Pumphrey* v. *Quillen* (1956), 165 Ohio St. 343 [59 O.O. 460].

Even assuming that different conclusions could have been reached from the evidence, the findings of the trial court set forth in its opinion and judgment entry establish all the essential elements of fraudulent misrepresentation. The court found that plaintiff justifiably relied upon Elwood's 450,000-gallonage representation and that Elwood intended plaintiff to rely thereon. The court also found an injury caused to plaintiff by such reliance in paying a higher price for the route. While the trial court did not expressly find that defendant Elwood knew the representations were false, no other conclusion could be reached from the evidence. Defendant Elwood admitted that the route he was selling was not a 450,000-gallon route and that he was aware that it was not. Since the trial court apparently believed the testimony of plaintiff and the other witnesses that defendant Elwood expressly stated that the route was a 450,000-gallon route, all the essential elements of fraud have been factually established. The contention of defendant Elwood that plaintiff by investigation could have discovered that Elwood's representation was incorrect, at most, constitutes evidence bearing upon the issue of whether plaintiff had a right to rely upon the representation. The trial court found to the effect that plaintiff had such a right, which finding is supported by the evidence.

Accordingly, even assuming that the trial court erred in utilizing the theory of promissory estoppel, rather than fraud in the inducement, in finding, upon the issue of liability, that defendant Elwood should be accountable to plaintiff for Elwood's representations that the route was a 450,000-gallon route, any error is not prejudicial. Under either theory, defendant Elwood would be liable for essentially the same damages. The second assignment of error is not well-taken.[1]

* * *

Even if we were to consider plaintiff's cross-assignment of error, it would not be well-taken. While defendant Snyder-Koehler Realty made representations to plaintiff, there was evidence permitting a finding that the representations were made in good faith predicated upon information furnished by defendant Elwood, with defendant Snyder-Koehler having no more reason than plaintiff to doubt the accuracy of defendant Elwood's representations. The

---

[1] Reporter's Note: The text of the opinion as it appears herein was abridged by Judge Whiteside.

statements were not made under circumstances implying knowledge on the part of defendant Snyder-Koehler, but, rather, under circumstances indicating that it also relied upon information furnished by defendant Elwood.

For the foregoing reasons, all of the assignments of error are overruled, and the judgment of the Hancock County Court of Common Pleas is affirmed.

*Judgment affirmed.*

MILLER, P.J., and GUERNSEY, J., concur.

WHITESIDE, J., of the Tenth Appellate District, sitting by assignment in the Third Appellate District.