Day, J.
 

 The Court of Appeals reversed the judgment of the common pleas court in this case upon four grounds: First, error in the admission of evidence prejudicial to the receiver of A. W.
 
 *72
 
 Reiser & Co.; second, there is no proof establishing the fact, if any coal was removed, that it was done knowingly and intentionally; third, for error in the charge of the court to the jury as to the measure of damages under the facts of this case; and, fourth, upon the ground that the damages were excessive.
 

 As to the first ground of error, the record discloses that Brady, the plaintiff below, testified, in substance, that at the time he bought the land in question the seller, Charles Ball, told him the coal was all in place. Ball was next called to testify to the same thing. Brady’s testimony follows:
 

 “Q. Mr. Brady, at the time you received this deed for the premises from Chas. Ball in 1922, I will ask you what representation Mr. Ball made to you that any part of the premises were under-laid with coal? (Objection by defendant, overruled, and exception.) A. I can show you on the blueprint the part that was to be underlaid with coal. This block here, the ground here, all the coal was supposed to be there, Mr. Ball told me. He showed on the blueprint what was worked out and what wasn’t and guaranteed the coal being in there. (Motion to strike out by defendant, overruled, and exception by defendant.)
 

 “Q. You did have a reservation of the coal east of the ravine? (Objection, overruled; exception by defendant.) A. East of the ravine over this way contained a reservation of 15 acres or so of coal. (Motion to strike out by defendant, overruled, and exception by defendant.)
 

 “Q. The boundary of your coal land went south
 
 *73
 
 to that boundary line and north to the boundary-line was the representation that Charles Ball made to you April 15, 1922? (Objection by defendant, overruled, and exception by defendant.) A. He told me the coal was all there. We have another blueprint made of it.”
 

 Was the admission of this testimony over the objection and exception of the receiver of the coal company prejudicial to the coal company? We think it was, for the reason that one of the contentions of the defendant was that, if the coal was removed, the said partnership, nor any of its members, nor either of them, nor the receiver, had any knowledge of the removal of said coal, that, if this coal had been removed, it was removed by other parties, mining from other directions, so that, whether or not the coal said to have been taken by defendant in error was in place or not on April 15, 1922, was an issue in the case, and was therefore not the subject of hearsay testimony. If proof was required of whether the coal in question was in place on April 15, 1922, the declaration of the seller thereof to the buyer was not the way in which the same should have been proved as to these parties not present when the conversation took place. It is not claimed that the defendant, or any one representing it, was present when these declarations were made by Ball to Brady, and we cannot see how, under any consideration, the coal company would be bound thereby. It is true that immediately upon reception of such testimony the plaintiff called Charles Ball and asked him the same question, to wit:
 

 “Q. North of the boundary line, what representa
 
 *74
 
 tion did you, as grantor of the deed, make to Benjamin Brady and his wife as to whether there was coal in there? A. It was understood between Brady and I that the coal was supposed to be there.”
 

 This appears not to have been objected to by the defendant. However, the objection and exception to the reception of this class of testimony having just been made to the court, and the court having ruled upon it adversely to the defendant, and the same having gone to the jury over the objection of the defendant, it was not necessary for the defendant to again object to the same conversation; the ruling of the court having been made upon the point. Having once saved the question as to that conversation, it was not necessary to continue to object. In
 
 L. S. & M. S. R. R. Co.
 
 v.
 
 Yokes,
 
 12 C. C., 499, 5 C. D., 599, Laubie, J., says:
 

 “And, although there was no specific objection to some of it [testimony already admitted over objection and exception], it was not necessary for the defendant below to continue to object to that class of testimony; once was sufficient. Indeed, where objection is once made, and the court has established a rule, some courts assert that it is impertinent in counsel to continue objecting.”
 

 Further authorities along the same line may be found in Jones on Evidence (3d Ed.), Section 894, p. 1413: “But when there has been a sufficient
 

 and specific objection to testimony, it is not necessary to repeat the objection whenever testimony of the same class is offered.” (Citing numerous cases.)
 

 
 *75
 
 We quote from 38 Cyc. at page 1399: “Where an objection to evidence is distinctly made and overruled, it need not be repeated to the same class of evidence to save the objection, although the question is asked of another witness.” See cases cited.
 

 We think the Court of Appeals was right in regarding the testimony as erroneously admitted.
 

 Another ground of reversal by the Court of Appeals was that there was no proof establishing the fact, if any coal was removed, that it was done knowingly and intentionally.
 

 The issues in this case were sharply defined, the plaintiff claiming in the petition that the defendant coal company “willfully, wrongfully, unlawfully and knowingly, and without any title, right or authority therefor, mined, removed and carried away” his coal. The defendant denied that the company had ever taken any of the plaintiff’s coal or injured his property, and further, if any coal whatever had been taken from under the premises of the plaintiff, the same was taken by some person or persons other than the defendant company, and without any knowledge whatsoever on the part of its members.
 

 Practically the only testimony that we can find in the record which might be said to tend to prove knowledge upon the part of the defendant in error was that of the witness Henderson, whose testimony, in substance, was that the mine boss told him that:
 

 “There would be trouble about two cars [acres] of coal * * *. Mizer said we would have to stop these two rooms, they were going through over the
 
 *76
 
 line; lie said, ‘You square up,’ and the next night he said everything was all right.”
 

 Mizer, the mine boss, testified that this conversation related to two acres of coal under certain buildings, and that the Reisers bought this from the owner, and that none of these rooms in which Henderson worked extended over the line, according to measurements.
 

 The Court of Appeals was apparently of the opinion that the coal concerning which Henderson testified was located under the said buildings, and that that was the coal about which the mine boss said there would be some trouble, and this view is corroborated by other testimony. We do not feel justified, therefore, in saying that the Court of Appeals was wrong in its conclusions in the finding that there was no testimony tending to show that the defendant in error knowingly and intentionally took the coal of the plaintiffs. This was the paramount issue in the case; the defendant not claiming that the coal was taken innocently, or under a mistaken idea as to ownership, but denying that it had taken it at all. On the other hand, the plaintiffs’ claim was that the coal company had taken this coal willfully, wrongfully, unlawfully, and intentionally, and without any title or right or authority therefor.
 

 Not finding sufficient in the record to say that the Court of Appeals was wrong in its conclusion that there was no proof establishing the fact of an intentional taking of the coal as claimed by the plaintiffs, we are reluctant to disturb its conclusion thereon as to that ground of reversal. The question how far the knowledge of the agent Hender
 
 *77
 
 son was the knowledge of his principal in an action to recover what is tantamount to punitive damages was not briefed or argued.
 

 A third reason for reversal, as set forth in the journal entry of the Court of Appeals, was that there was error in the court’s charge as to the measure of damages, under the facts. The trial court upon that subject charged as follows:
 

 “(1) If you find from the evidence that the defendants entered upon the lands of the plaintiffs after the time that the plaintiff acquired ownership of said premises up to and including the day on which he filed his petition in this case and severed and removed coal therefrom, and that such entry by the defendant upon the land of the plaintiff was willful and with utter disregard of the plaintiff’s rights of property, or that such entry was the result of culpable negligence, then the plaintiffs are entitled to recover for the fair market value of all of the coal you find from the evidence to have been removed from plaintiffs’ lands by the defendant, as such coal lay at the mouth of the mine, without regard to the cost of severance and placing the same.
 

 “(2) If, however, you find from the evidence, that the defendant entered upon the lands of the plaintiffs during or within the above-stated time, and severed and removed coal therefrom, and that such entry, mining, and removal of coal therefrom during such time by the defendants was under the mistaken belief on the part of the defendant that it was mining and removing coal from its own land, then the plaintiff is entitled to recover the value of the coal in place; that is the value of the coal as it
 
 *78
 
 existed before severance and transportation had taken place.
 

 “(3) If you find from the evidence that the defendant, during the time heretofore stated, entered upon the lands of the plaintiff and mined and removed coal therefrom, and you further find from the evidence that in so doing he rendered inaccessible the plaintiff’s other coal, thereby destroying the value thereof, then, in addition to the coal removed by the defendant, the plaintiff is entitled to recover for the value of the coal rendered inaccessible.
 

 “(4) You are further instructed that, having ascertained the probable cost of delivery at the mouth of the mine on a platform provided therefor, without reference to the public highway or any carrier’s value of such coal, the value before severance would be ascertained by deducting from such market value all transportation charges.
 

 “(5) You are further instructed, in ascertaining the market value of the coal taken by the defendant, including the coal belonging to plaintiff rendered inaccessible. Due consideration should be given to the plaintiffs’ facilities for marketing with reference to public highways and common carriers. ’ ’
 

 Without discussing the views of the Court of Appeals as set forth in its opinion, we think that under the authorities in this state
 
 (Burgner
 
 v.
 
 Humphrey,
 
 41 Ohio St., 340, and
 
 Keys
 
 v.
 
 Pittsburg & Wheeling Coal Co.,
 
 58 Ohio St., 246, 50 N. E., 911, 41 L. R. A., 681, 65 Am. St. Rep., 754), the measure of damages for coal taken without right, but innocently or by mistake, and under the belief
 
 *79
 
 that it was the property of the taker, is the value of the coal in place; and in conjunction therewith also may be considered every circumstance, natural or artificial, which tends to enhance or diminish the value of such coal in place. In an exhaustively annotated note on the subject, it is said in 7 A. L. R., p. 908:
 

 “It is the prevailing rule that a trespasser who encroaches on the land of another, mining and removing minerals, if the taking is inadvertent or under a claim of right or a
 
 bona fide
 
 belief of title, is liable in damages only for the minerals removed, based on their value as they lay in the mine before being disturbed, or, as is often expressed, their value
 
 in situ.
 
 And if evidence is not obtainable of the value of the minerals
 
 in situ,
 
 or if the circumstances of the case make it impracticable to fix their value in this manner, the same result is generally arrived at by proving their value at the mouth of the pit, and deducting therefrom the expense of mining and transporting them to that place. ’ ’
 

 The foregoing announcement, in the opinion of the writer, is sustained by the authorities, and,, when construed in the light of
 
 Burgner
 
 v.
 
 Humphrey, supra,
 
 and
 
 Keys
 
 v.
 
 Pittsburg & Wheeling Coal Co., supra,
 
 states the rule in this state for the recovery of this species of damages.
 

 The underlying principle is to award the owner of the coal so taken innocently, but under a mistaken idea of right, full compensation for his property so taken.
 

 As to the measure of damages for coal taken willfully, intentionally, wrongfully, and knowingly,
 
 *80
 
 and without right, the measure of damages is the market value of the coal mined, at the time of removal, without any deduction whatsoever. As going to show the value of the coal, the market value of the same at the mouth of the mine, without any deduction for the cost of labor and other expenses incurred in severing and transporting such coal, may be shown. It is the theory of such damages that the wrongdoer should not be allowed any profit or compensation for his wrongful act, done knowingly and willfully. 18 R. C. L., 1257; 27 Cyc., 640;
 
 Keys
 
 v.
 
 Coal Co.,
 
 58 Ohio St., 269 (50 N. E., 911); 8 Ann. Cas., 43, 44; 7 A. L. R., 922.
 

 The rule for the measure of damages, as given by the trial court to the jury, we find to have been substantially correct, and we cannot take the view of the Court of Appeals as to this ground of reversal.
 

 As to the fourth ground of reversal, to-wit, that the verdict of the jury was excessive, it is unnecessary to discuss the same, in view of the fact that this case will be retried, when the measure of damages as we have above indicated should be applied.
 

 To summarize, it appears that there is error in the record in the admission of the testimony of Brady and Ball with reference to their conversation as to the coal in place at the time of the giving of the deed by Ball to Brady; further we do not find sufficient in the record to justify a reversal of the Court of Appeals in its conclusion as to the evidence which it found lacking to support the verdict, for which reasons we reach the conclusion that the judgment of the Court of Appeals should
 
 *81
 
 be affirmed and the cause remanded for further proceedings according to law.
 

 Judgment affirmed.
 

 Marshall, C. J., Jones, Matthias, Allen, Kinkade and Robinson, JJ., concur.