[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Trina Emshoff ("Appellant") appeals the judgment of the Fostoria Municipal Court awarding damages in the amount of $1,673.17 to Sara and William Boice ("Appellees").
In March 1997, the Appellees purchased a house located at 124 North Grant Street, Fostoria, Ohio. Prior to renting the house, the Appellees cleaned the carpet because the carpet had a heavy pet odor.
In April 1997, Appellant contacted the Appellees regarding the rental of this house. The Appellant and the Appellees entered into a one-year written lease for the property for four hundred dollars a month beginning on May 1, 1997. Appellant gave the Appellees a four hundred dollar security deposit.
Appellant moved into the premises but the house required several repairs. For instance, on May 25, 1997, the lights in the living room, dining room, and bathroom went out because of an electrical problem. The Appellees investigated the problem on May 28, 1997. While fixing the problem, the Appellees left the fuse box open, the insulation off and the wires exposed on the back porch for four or five days. The Appellees instructed Appellant not to let her six-year old son or anybody else on the back porch. In addition, after Appellant took occupancy, the carpet still had an odor to it. The Appellees removed the carpet from the house on June 2, 1997. The carpet was not replaced prior to Appellant moving out on August 25, 1997. Other problems existed with the house throughout Appellant's tenancy, including a roof leak.
For May and June 1997, Appellant paid the monthly rent of four hundred dollars. Appellant paid the rent for July 1997, but she stopped payment on the rent check. Appellant did not pay rent for August 1997.
On July 22, 1997, Appellees initiated a forcible entry and detainer action with claims for damages against Appellant. On August 7, 1997, the Appellees and the Appellant entered into a consent entry on the issue of possession. The issue of damages was continued. Appellant answered the complaint and amended complaint and filed counterclaims for violations of R.C. 5321.04, for a breach of implied warranty of habitability and for the failure of the Appellees to return her security deposit.
The Appellees testified that the house was infested with fleas after Appellant moved out and that it could not be leased without extermination of the fleas. The house was exterminated on the eighth, thirteenth, and twenty-fourth of September 1997 at a cost of $132.50.
On February 11, 1998, a hearing was held in the Fostoria Municipal Court and the Appellant's counterclaims were dismissed. The trial court awarded the Appellees $1,673.17 on their claims. Of this judgment award, the Appellees were awarded $1,200 for rent for July, August, and September 1997; $15 for late charge for rent for July; $15 for late charge for rent for August; $81 for late fees for rent for July; $72 for late fees for rent for August; $25 for stop payment of July's rent check; $10.59 for a door lock and $2.08 for keys; $75 for cleaning the premises; $132.50 for exterminating the premises; and $45 for trash removal from the garage.
On March 25, 1998, the Appellant moved the trial court for a new trial which was denied. Appellant now asserts six assignments of error.
 ASSIGNMENT OF ERROR NO. I The court erred in dismissing Appellant's claim for breach of landlord's duties under Ohio Revised Code Section 5321.04.
Under this assignment of error, Appellant contends that the trial court erred as a matter of law in refusing to admit her testimony as to the rental value of the rental premises in its defective condition. Appellant also contends that the trial court's decision to dismiss Appellant's contract claim for breach of landlord's duties under R.C. 5321.04 was against the manifest weight of the evidence.
First, Appellant claims she should have been able to testify as to the rental value of the house. Appellant was asked to give her opinion in regards to the rental value of the house by her attorney, Mr. Patel. Mr. Marley objected on behalf of the Appellees and the trial court sustained the objection.
 Q: In your opinion, what is the, what would you say would be the rental value of the premises in the condition it was in?
 MR. MARLEY: Object, unless she's qualified.
THE COURT: You gotta be qualified.
 MR. MARLEY: He's asking her to give an opinion as to what the rental should be and —.
 THE COURT: Yeah.
 MR. MARLEY: — of the condition and I don't think she is an expert.
 THE COURT: I don't see any testimony that she is a real estate agent or in the business.
 MR. PATEL: Your Honor —
MS. EMSHOFF: I —
 MR. PATEL: — there is case law that will allow tenants to —
 THE COURT: What?
 MR. PATEL: There is case law that allows [a] tenant to testify as to the rental value of the premises in the defective condition.
 THE COURT: We've established the value of the premises because she paid it. That ended that. I know what you're talking about. We're not talking about a place where that, where we're quarreling over the rent. We're talking about a situation where she has paid the rent.
 MR. PATEL: Your Honor, that the con — that would be the value of the premises in inhabitable condition. We're alleging the condition of the premises was not habitable. In her opinion what is — what is —
 THE COURT: I haven't heard any testimony to the effect that it is [un]inhabitable yet by anybody who is an expert in this area.
 MR. PATEL: But there's case law that allows tenants to —
 THE COURT: I understand that. I, I've been down this road, oh, about 25 years of being down this road. At least that. March on. Objection sustained.
Case law does not, however, support the trial court's decision to sustain the objection by Appellees. "A lessee of real property is competent to give opinion testimony as to the rental value of the leased premises." Smith v. Padgett (1987), 32 Ohio St.3d 344, paragraph two of the syllabus. "Clearly, thecompetence of a lessee to give an opinion as to the reasonable rental value of the leased premises is meaningless unless such opinion is relevant to the determination of damages." (Emphasissic.) Id. at 346. The issue of damages was disputed by Appellant in this case. As the measure of damages is the difference between the rental value of the property in its defective condition and what the rental value would have been had the property been maintained, Appellant's testimony was relevant on the issue of damages. Id. at paragraph one of the syllabus.
Appellant later was asked why she stopped payment on the July rent check and why she did not pay the rent for August; she testified as follows:
 A. The house was not the house that I had rented. It was not what I was promised. And, they had breached the contract of our Lease and I was not going to pay four hundred dollars for a house that I wouldn't have rented for fifty bucks.
Although we find that the trial court erred in failing to allow Appellant to testify as to the rental value of the house in its present condition, we find that this error was not prejudicial. The trial court determined that the house was not in a defective condition. Thus, the trial court did not need to reach the issue of the value of the house in its defective condition. Accordingly, we find that failure to allow Appellant to testify as to the value of the rental value was not prejudicial error.
Second, Appellant claims that the dismissal of her claim against the Appellees was against the manifest weight. In reviewing a weight-of-evidence claim, a judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. C.E. MorrisCo. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. We defer to the findings of the trial court since it is in the best position to observe the witnesses and weigh their credibility.Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77,80. Further, a difference of opinion on the credibility of witnesses and the evidence is not grounds for reversal. Id.
Appellant contends that the Appellees breached their landlord duties which resulted in a reduction of the rental value of the house. R.C. 5321.04(A) in part provides:
 (A) A landlord who is a party to a rental agreement shall do all of the following:
 (1) Comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety;
 (2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;
 (3) Keep all common areas of the premises in a safe and sanitary condition;
 (4) Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air conditioning fixtures and appliances, and elevators, supplied or required to be supplied by him[.]
Contrary to the argument of the Appellees, R.C. 5321.07
provides only that a tenant may give notice to the landlord in writing of the violations of R.C. 5321.04. This language is not mandatory. R.C. 5321.07 creates an additional right for the tenant. In Miller v. Ritchie (1989), 45 Ohio St.3d 222, 224-25, the Court stated:
 Although risking eviction, a tenant who withholds but does not escrow rent does not waive the right to recover damages caused by a landlord's breach of duty. The forcible entry and detainer statute, R.C. 1923.061(B), states: "In an action for possession of residential premises based upon nonpayment of the rent or in an action for rent when the tenant is in possession, the tenant may counterclaim for any amount he may recover under the rental agreement or under Chapter 3733. or 5321. of the Revised Code." R.C. 5321.03 authorizes a landlord to bring a forcible entry and detainer action and provides in division (B) that "[t]he maintenance of an action by the landlord under this section does not prevent the tenant from recovering damages for any violation by the landlord of the rental agreement or of section 5321.04 of the Revised Code."
Thus, a tenant may still file a counterclaim against the landlord without having first taken advantage of R.C. 5321.07. As such, Appellant did not waive her right to recover damages.
Appellant alleged the following violations of R.C.5321.04(A): (1) the odor of the carpet; (2) the nails, splinters, vents and gaps of the hardwood floor; (3) the electrical short-circuits and exposed live-wires; (4) the junk and trash in the garage; (5) the leaks in the kitchen and garage; (6) the incomplete window trimming; (7) the ripped screen; (8) the broken screen doors and latches; (9) the broken and leaky kitchen and bathroom faucets; (10) the cracks in the ceiling; (11) the hole in the ceiling; (12) the peeling paint; (13) the loose ceiling fan; and (14) the lack of smoke detectors. The Appellees testified to their knowledge of the following conditions: (1) the odor of the carpet; (2) the roof leak in the kitchen; (3) the hole in the ceiling; (4) the electrical short-circuits and exposed live-wires; (5) the broken bathroom faucet; and (6) the nails, splinters, vents and gaps in the hardwood floors. Appellant testified that the Appellees stated to her that they would remove the junk and garbage from the garage, fix the leak in the garage roof, finish the trim around the windows, fix the ripped screen, replace the broken screen door and latch, possibly paint the crack in the ceiling, fix the peeling paint and border in the back bedroom, and supply smoke detectors. In addition, Appellant testified that she gave to Appellees an inspection sheet on which she notified them of the lack of screens and the broken ceiling fan.
The trial court determined that the inspection sheet was not given to the Appellees in a timely matter as required by the lease. The trial court also found that the Appellees responded to Appellant when she requested repairs. The trial court determined that the repairs were fixed by the Appellees, except for the screen which did not make the house uninhabitable. As to the carpeting, the trial court found that the delay was reasonable and did not make the house uninhabitable. Thus, the trial court concluded by dismissing Appellant's claim for breach of landlord's duties.
After having reviewed the record, we find that competent and credible evidence for the trial court's judgment exists. The Appellant makes several claims with respect to the property that could demonstrate the noncompliance of the Appellees with R.C.5321.04(A).
First, Appellant claims that an odor in the carpet in the house existed when she moved into the residence. The Appellees concede that the carpet did have an odor even after they had the carpet professionally cleaned. The Appellees agreed to remove the carpet and did so on June 3, 1997. The carpet was never replaced. Hardwood floors existed under the carpet. Appellant testified that the hardwood floors had nails protruding from the boards, that there existed gaps between the floor and the baseboards, and that the air vents extended above floor level without the carpet present. The Appellees testified and produced a receipt which demonstrated that they apparently ordered carpet for the house on June 17, 1997. The carpet was not placed in the house prior to Appellant moving out of the house.
We find that competent and credible evidence exists that the floors were usable as the floors were hardwood and the Appellees removed the carpet which had an odor to it. Moreover, the Appellees ordered carpet for the house.
Second, Appellant complains that the Appellees exposed Appellant and her son to electrical hazards. On May 25, 1997, the lights in the living room, dining room, and bathroom went out. The Appellees opened the fuse box on the wall in the back porch area and opened the wall itself to view the electrical wires. The wires were exposed in the open for four or five days. The Appellees told the Appellant not to allow anyone near the wires. We find that competent and credible evidence exists that the wires were exposed for a short period of time while the Appellees made the necessary repairs.
From reviewing the remaining evidence, we find that competent and credible evidence exists to support the findings of the trial court. Accordingly, we overrule Appellant's first assignment of error.
 ASSIGNMENT OF ERROR NO. II The court erred in dismissing Appellant's claim for her security deposit.
Appellant contends that the trial court erred by not ordering her security deposit returned or offsetting her security deposit with the damage award to the Appellees. Upon review, we agree.
Appellant paid a four hundred dollar security deposit to the Appellees. R.C. 5321.16(B) imposes a statutory duty upon landlords to return a security deposit within thirty days after the termination of the lease or, within that time, to provide the tenant with an itemized list of claimed deductions together with the balance of the deposit. If a landlord fails to comply with this duty, a tenant may recover damages equal to any portion of the deposit wrongfully withheld together with reasonable attorney fees. R.C. 5321.16(C). The tenant, however, is obligated to provide her landlord with a forwarding address to which the deposit can be sent. R.C. 5321.16(B). "The landlord's duties under R.C. 5321.16(B) are not triggered until such time as his tenant provides notice of that new address." Grove v. Turman
(Mar. 28, 1997), Athens App. No. 96CA1728, unreported, citingCristal v. DRC International, Inc. (1991), 74 Ohio App.3d 493,496 and Prescott v. Makowski (1983), 9 Ohio App.3d 155, 156. Contrary to the argument of the Appellees, R.C. 5321.16(B) provides only that the tenant must give the landlord her new address or the tenant will not be entitled to damages or attorney fees.
According to her rental agreement, Appellant was required to to the Appellees in writing an address to return her security deposit. Appellant sent a request for the return of her deposit to an address other than the address contained in her rental agreement and the Appellees testified that they did not receive a forwarding address for Appellant. Thus, it was impossible for the Appellees to return the security deposit within the required thirty day time frame of the lease being terminated.
We find that the Appellees cannot be held responsible for failing to comply with the thirty day time limit when the Appellant failed to provide the Appellees with a forwarding address. Accordingly, the provisions of R.C. 5321.16(C) do not allow for double damages and attorney fees under the circumstances of this case. We do, however, find that the tenant is still entitled to the return of her security deposit. Thus, the trial court erred in failing to offset the amount of the security deposit (four hundred dollars) from the award of the Appellees. Accordingly, we sustain Appellant's second assignment of error and remand this cause for an appropriate reduction in the damage award.
 ASSIGNMENT OF ERROR NO. III The court erred in allowing the landlord to recover the rent subsequent to the tenant's vacating of the rental premises.
Appellant contends that the trial court erred in allowing the landlord to recover the rent for one month after the tenant had vacated the rental premises pursuant to a consent entry and where the rental agreement provided rent only for days occupied.
Appellant signed a rental agreement for the premises which began May 1, 1997 and ended May 1, 1998. The rental agreement provides: "If rent is not paid timely, management may exercise its right to request tenant to vacate the property immediately and pay for days occupied and unpaid." For May and June 1997, Appellant paid the monthly rent of four hundred dollars. Appellant paid the rent for July 1997, but she stopped payment on the rent check. Appellant did not pay rent for August or September 1997.
On July 22, 1997, the Appellees initiated a forcible entry and detainer action with claims for damages against Appellant. On August 7, 1997, the Appellees and the Appellant entered into a consent entry on the issue of possession. The issue of damages was continued. Appellant moved out on August 25, 1997.
After Appellant moved out, the Appellees testified that the house was so infested with fleas that it could not be leased without extermination of the fleas. According to the Appellees, the house was exterminated on the eighth, thirteenth, and twenty-fourth of September 1997. Further, the Appellees testified that due to the flea extermination, the house could not be rented until at least October 4, 1997. The trial court determined that the house was constructively occupied until after the first of September due to the fleas. The trial court attributed the fleas to a pet cat which Appellant had while in the house.
We cannot find that the trial court erred in determining that the presence of fleas was a result of Appellant's tenancy. As such, the trial court determined that she constructively occupied the house until the fleas were removed and the house could be rented to another person. The fleas were not removed until the end of September. Accordingly, we need not discuss whether Cubbonv. Locker (1982), 5 Ohio App.3d 200 (holding that upon landlord's election to terminate the lease agreement because of the tenant's failure to pay rent and upon subsequent eviction of the tenant, the tenant is released from liability for rent not yet due; however, the tenant remains liable for rent due prior to the time of eviction) applies as we have found that it was not error for the trial court to hold that Appellant did not vacate the premises until September.
Accordingly, we overrule Appellant's third assignment of error.
 ASSIGNMENT OF ERROR NO. IV The court erred in awarding late charges and late fees, which the Appellees admitted were a penalty.
Appellant contends that the trial court erred in awarding late charges and fees, which the Appellees admitted were a penalty and which the Appellees admitted were not reasonably related to the actual damages.
The rental agreement provided the following provision:
 RENT: Rent ($400.00) is due by the 28th of the month for the following month and must be in the manager's possession by the due date. Payments are to be mailed through the U.S. Postal Service to P.O. Box 103, Fostoria, Ohio 44830. A $15.00 late charge will be added if the rent is not received within 3 days of due date, plus an additional $3.00 per day payment commencing on the fifth day after rent is due until paid in full. If rent is not paid timely, management may exercise its right to request tenant to vacate the property immediately and pay for days occupied and unpaid. If tenant makes payment by check that is dishonored, tenant will be charged a $25.00 fee. Payment by a dishonored check will not stop late fees from being charged.
The trial court awarded Appellees the following charges: $15 for late charge for rent for July; $15 for late charge for rent for August; $81 for late fees for rent for July; and $72 for late fees for rent for August. Appellant now asserts that the fees and charges were a penalty and are unenforceable as a matter of law.
 Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof.
 Samson Sales, Inc. v. Honeywell, Inc. (1984), 12 Ohio St.3d 27, paragraph one of the syllabus, citing Jones v. Stevens (1925),112 Ohio St. 43, paragraph two of the syllabus.
At the end of the hearing in this matter the trial judge stated the following with regards to the late fees and charges:
 Accordingly, the Court will find for the Plaintiff and against the defendant. And, uh, the rent will be in the amount of one thousand three hundred and eighty-three dollars, which is rent plus a late charge and the additional eighty-one dollars for the late per day, three dollars per day obligation; four hundred dollars for the month of August, plus, late fee, and four hundred dollars for the month of September.
In its judgment entry the trial court stated the following the late fees and charges in its findings of fact:
 The lease provides for a $15.00 late charge if rent is not received within 3 days of due date. The lease also provides an additional $3.00 per day payment commencing on the fifth day after the rent is due until paid in full.
In its decision the trial court awarded the following to the Appellees:
 In addition to rent, the Defendant owes the Plaintiffs late charges in the amount of $30, $15 for the month of July and $15 for the month of August 1997.
 In addition to the rent and the late charges, Defendant owes the Plaintiffs late fee, of $3 per day commencing of the fifth day after the rent is due, for July and August 1997 in the amount of $81.00 and $72.00 respectively.
Thus, the trial court determined $183 for late fees and charges for two months was appropriate as stated in the lease.
In our view, the chronology of events, together with the uncontroverted overall condition of the premises, and in particular, the condition and duration of the exposed flooring as fully described earlier, make the trial court's back rent determination a close call. We have deferred to the factual findings of the trial court on that issue. Nevertheless, the record shows that by the month of July, the underlying rent obligation was legitimately in dispute and eviction proceedings had begun. While the landlord ultimately (and in our view, narrowly) prevailed on most of the issues involved, the record also demonstrates that there was a reasonable basis for the position taken by the tenant.
In these circumstances, it is our conclusion that the trial court's late fee award has the character of an unreasonable penalty and therefore constituted an abuse of discretion. This seems particularly true considering the award of back rent included a month of court-determined "constructive" possession of the premises. For these reasons, the fourth assignment of error is sustained.
 ASSIGNMENT OF ERROR NO. V The court erred in allowing the landlord future damages for the removal of the trash from the garage, which trash was in the garage when the Appellant began the occupancy.
Appellant contends that the trial court erred in allowing the Appellees to recover future damages for the trash removal from the garage.
In this case, the trial court awarded damages in the amount of forty-five dollars to the Appellees for garbage allegedly left in the garage by the Appellant. R.C. 5321.05(A)(2) provides that a tenant must "dispose of all rubbish, garbage, and other waste in a clean, safe, and sanitary matter." If the tenant fails to abide by this, the landlord may recover actual damages and attorney's fees. R.C. 5321.05(C)(1). In addition, Appellant's lease provides that "[n]o trash or junk will be permitted to accumulate at premise inside or out."
Appellant first contends that the garbage was in the garage prior to her tenancy. Appellant relies on her testimony and the testimony of her mother, Geraldine Stauffer, at trial to support her first contention. The Appellees testified, however, that the garbage belonged to the Appellant:
 Q. Okay. And did you have the trash removal [sic] also?
 A. Uh, yes, the garage was — had a bunch of stuff left in it. Everything was out of the house but there was stuff shoved in the garage.
 Q. And what did that cost?
 A. Uhm, actually it's still there but it would cost me forty-five dollars —
 Q. Okay.
A. — to have it removed.
The trial court determined that the garbage in the garage was a result of Appellant's tenancy. Based on the testimony of the Appellees, we cannot find that the trial court's determination was against the manifest weight of the evidence. See C.E. Morris Co.v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus; SeasonsCoal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
Appellant next contends that the court erred in awarding damages in the amount of forty-five dollars to the Appellees because the Appellees had not incurred damages as the garbage was still in the garage at the time of the trial. Appellant citesMentor Lagoons, Inc. v. Drizigacker (June 18, 1982), Lake App. No. 8-247, unreported, for the proposition that future damages, which in fact have not been paid or showed to be owed, cannot be awarded to a landlord because the landlord, in reality, has "not been damaged." In Mentor Lagoons, supra, the tenant argued that the landlord did not present any competent evidence in support of his claim for damages as a result of cleaning up and repainting the apartment and re-rental costs. The Eleventh Appellate District held that the landlord failed to offer sufficient evidence to support its award of damages. Id.
The appropriate standard when reviewing an award of damages is manifest weight of the evidence. Rasnick v. Tubbs (Feb. 25, 1998), Marion App. No. 9-97-46, unreported. As we stated above, a reviewing court should not reverse a trial court's judgment as against the manifest weight of the evidence if the judgment is supported by some competent, credible evidence. C.E. Morris Co.,supra. Here, the Appellees testified that the Appellant left garbage in the garage and that it would cost them forty-five dollars to have the garbage removed. The testimony regarding the cost of removing the garbage from the garage was uncontradicted. Moreover, Appellant testified that when she had her garbage removed from the premises it cost her forty-five dollars. Accordingly, we find that competent, credible evidence exists to support the trial court's award of damages in the amount of forty-five dollars.
Appellant also claims that the award of forty-five dollars represents a future award and not the actual damages of the Appellees. We are not persuaded by this argument.
 The fundamental rule of the law of damages is that the injured party shall have compensation for all of the injuries sustained. Allison v. McCune (1846), 15 Ohio 726; Loeser v. Humphrey (1884), 41 Ohio St. 378; Brady v. Stafford (1926), 115 Ohio St. 67, 79; Pryor v. Webber
(1970), 23 Ohio St.2d 104, paragraph one of the syllabus. Compensatory damages are intended to make whole the plaintiff for the wrong done to him or her by the defendant. Id.; Lake Shore Michigan S. Ry. Co. v. Hutchins (1881), 37 Ohio St. 282, 294. Compensatory damages are defined as those which measure the actual loss, and are allowed as amends therefor.
 Fantozzi v. Sandusky Cement Prod. Co. (1992), 64 Ohio St.3d 601,612. Prospective damages may be awarded when the damages are reasonably certain to result from an injury by the wrongdoer.Pennsylvania Co. v. Fills (1901), 65 Ohio St. 403, paragraph two of the syllabus. In this case, Appellant left garbage in the garage. Thus, the Appellees were damaged and will have to remove the garbage. Accordingly, the trial court did not err in awarding damages to the Appellees.
Appellant's fifth assignment of error is overruled.
ASSIGNMENT OF ERROR NO. VI
 The court erred in awarding damages for the stop payment of the rent check.
For the reasons set forth in our disposition of the fourth assignment of error, it is likewise our conclusion that under the circumstances of this case, the award to the landlord of a $25 fee for the tenant's stopping payment of the July rent check on top of the back rent award is in the nature of an unreasonable penalty. Accordingly, the sixth assignment of error is sustained.
We also note that the trial court's judgment entry journalized March 23, 1998 contains a mathematical error in the total calculation of "$1,550.67 plus costs" should have been "$1,673.17 plus costs" in the aforementioned journal entry and we also remand this matter for the consideration of this error along with the security deposit credit as set forth in Assignment of Error No. II. In addition, we remand this matter for the credit of the late fees\charges and the stop payment fee as set forth in Assignments of Error IV and VI.
Judgment affirmed in part, reversed in part and remandedfor further proceedings consistent with this opinion.
 BRYANT, J., concurs.