[Cite as *Barker v. McCoy*, 2015-Ohio-3127.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

| | | |
|---|---|---|
| James Barker, et al., | : | Case No. 14CA849 |
| Plaintiffs-Appellees, | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| Dale McCoy, et al., | : | |
| Defendants-Appellants. | : | **RELEASED: 7/29/2015** |

APPEARANCES:

Thomas M. Spetnagel, Chillicothe, Ohio, for appellants.

J.B. Marshall, Jr., Portsmouth, Ohio, for appellees.

Harsha, J.

{¶1}    James, Paul and Viola Barker filed a complaint against Dale and Robert McCoy to quiet title to 50 acres of land in Pike County and seeking damages for theft of timber. McCoys counterclaimed to quiet title, alleging that they were the fee simple owners of the disputed 50 acres. Later both sides amended their claims to include allegations of ownership through adverse possession. After a bench trial the court ruled in favor of the Barkers and awarded them compensatory and punitive damages, as well as attorney fees.

{¶2}    The McCoys assert that the trial court erred when it quieted title to the disputed property to the Barkers. The McCoys argue that because the Barkers' surveyor failed to follow the applicable standards for determining property boundaries, the trial court erred as a matter of law in considering the survey. The McCoys argue that without the survey the trial court's decision is against the manifest weight of the evidence. To

the extent the McCoys argue that the survey should not have been admitted into evidence, they forfeited this argument because they offered no objection to it at trial. And based on the survey there is substantial competent, credible evidence that the Barkers owned the 50 acres by virtue of their deed.  Accordingly, we overrule the McCoys' first assignment of error.

{¶3}   Next the McCoys claim that the trial court erred when it permitted the Barkers to amend their pleading to conform to the evidence to assert ownership of the property through adverse possession, and that the court further erred in ruling in the Barkers' favor on that claim. Because we affirm the trial court's finding that the Barkers were the legal titleholders of the disputed property by deed, this assignment of error is moot.

{¶4}   The McCoys' remaining claims concern the court's damages award. First, they contend that there was insufficient evidence to find Robert McCoy individually liable to the Barkers.  However, the record contains substantial competent, credible evidence of Robert McCoy's personal involvement in the trespass and tree removal operation. Therefore, we affirm the trial court's award of damages against Robert McCoy, individually.  Additionally the record contains competent credible evidence that Robert McCoy's conduct was characterized by ill will, a spirit of revenge, and a conscious disregard for the rights of the Barkers. Therefore, the trial court properly assessed punitive damages.  However, there was no evidence in the record of the reasonableness of the attorney fees awarded, thus the trial court abused its discretion in awarding them.  We overrule the McCoys' fourth and fifth assignments of error

concerning Robert McCoy's individual liability and punitive damages, but find merit in the McCoys' sixth assignment of error concerning the attorney fees award.

## I. FACTS

{¶5}    James, Paul and Viola Barker claim ownership of a 50 acre tract of land in Pike County, Ohio.[1] They assert that James's father, Floyd Barker, received title to the land by deed in 1942.  The 50 acre tract, which is one of four contiguous parcels owned by the Barkers, is the only one involved in the dispute.  Dale McCoy and his brother Robert McCoy own a 90 acre tract of land contiguous to the disputed 50 acre tract, which they also claimed to own. The dispute reached full bloom in late 2001 and early 2002.  The Barkers testified that they were considering selling their entire holdings and had the property surveyed.  Dale and Robert McCoy believed that 50 acres belonged to them and disagreed with the Barkers' survey.  The McCoys decided to commence harvesting timber on the 50 acres despite the ongoing dispute. The Barkers filed a lawsuit and sought a preliminary injunction against the McCoys to prevent them from continuing their timber harvesting operations pending a court decision to determine ownership of the 50 acres. The trial court granted the Barkers a preliminary injunction and ultimately awarded them ownership of the 50 acres, compensatory damages including attorney fees, and punitive damages. The McCoys appealed.

## II. ASSIGNMENTS OF ERROR

{¶6}    The McCoys assign the following errors for our review:

1. The Trial Court Erred In Quieting Title to the Disputed Property in Favor of Appellees.

---

[1] The parties refer to the acreage interchangeably as 49.5 acres and 50 acres. Subsequent surveys have calculated the acreage to be 53.4454 acres. For consistency, we refer to it as 50 acres.

2. The Trial Court Erred In Permitting Appellees to Amend Their
   Pleadings to Conform to the Evidence.

3. The Trial Court Erred In Finding in Favor of Appellees on Their Claim
   for Adverse Possession.

4. The Trial Court Erred In Awarding Damages Against Appellee Robert
   McCoy, Individually.

5. The Trial Court Erred In Awarding Punitive Damages to Appellees.

6. The Trial Court Erred In Making an Award of Attorney Fees to
   Appellees.

### III. LAW AND ANALYSIS

#### A.  The Evidence Supports Quieting Title by deed in Favor of the Barkers

{¶7}    In arguing it was error to quiet title in favor of the Barkers, the McCoys

contend that the trial court improperly relied upon the Barkers' survey evidence because

their surveyor, Hubert M. Crabtree, failed to follow the applicable standards for

boundary surveys.  They argue that the Ohio State Board of Registration for

Professional Engineers and Surveyors has established minimum standards for

boundary surveys and that the evidence shows that the Barkers' surveyor failed to

follow the acceptable principles for resurveying boundary lines.  They contend that the

trial court erred as a matter of law in relying on this survey; and without the contested

survey, they further contend the court's decision to award the property to the Barkers

was against the manifest weight of the evidence.

{¶8}    The McCoys argue that they are not challenging the weight given by the

trial court to the survey, but rather its admissibility as competent evidence ("the

dispositive issue does not concern the weight given by the trial court to Appellees' survey, rather the issue is whether the court erred as a matter of law in considering that evidence…").  However, in spite of arguing now that the survey should not have been admitted, they offered no objection to it at trial.  The record contains several survey exhibits, some of which are survey maps prepared by Crabtree.  The McCoys stipulated to Crabtree's qualifications as an expert witness and did not object to the admission of any of the survey exhibits prepared by Crabtree. The trial court adopted the legal description and plat prepared by Crabtree in its decision, attaching a copy as Exhibit A to the judgment entry.

{¶9}    A party forfeits any error that arises during the trial court proceedings if that party fails to bring the error to the court's attention at a time when the trial court could avoid or correct the error. *Goldfuss v. Davidson,* 79 Ohio St.3d 116, 121, 1997–Ohio–401, 679 N.E.2d 1099. A failure to object at trial forfeits all but plain error on appeal. *Id.* The plain error doctrine is applicable in civil cases only where the error "seriously affects the basic fairness, integrity, or public reputation of the judicial process[.]" *Id.* at syllabus. Thus, the McCoys forfeited any argument challenging the admissibility of the survey. Moreover, the McCoys do not assert plain error and we see nothing in the record concerning the survey evidence indicating the need to apply the plain error doctrine.

{¶10} Because Crabtree's survey was admissible, the trial court properly relied on it to determine the McCoys owned the 50 acres by virtue of their deed. Therefore, we overrule the first assignment of error.

B. The Barkers' Amended Claim for Adverse Possession

**{¶11}** The McCoys argue that the trial court erred in allowing the Barkers to amend their complaint to conform to the evidence to assert an alternative claim of ownership of the disputed 50 acres by adverse possession. And they assert that the trial court erred in finding that the Barkers owned the 50 acre tract by adverse possession. However, we do not address these two assignments of error because they are moot by virtue of our affirmance of the judgment declaring Barkers to hold title by virtue of their deed. *See* App.R. 12(A)(1)(c). We overrule McCoys' second and third assignments of error.

## C.  Damages Against Robert McCoy Individually

**{¶12}** In their fourth assignment of error, the McCoys argue that the trial court erred in awarding damages against Robert McCoy in his individual capacity for the harm the Barkers suffered as a result of the cutting and removal of trees from their property. They argue that Robert McCoy did not personally cut the trees and, although he received the proceeds from the sale of the trees, it was in his capacity as Dale McCoy's guardian. As a result, they argue that the manifest weight of the evidence does not support the trial court's determination that Robert McCoy is individually liable to the Barkers for damages associated with the wrongful tree cutting operations.

**{¶13}** According to the record the parties submitted their evidence concerning the tree removal claim and damages by filing deposition transcripts, exhibits, and briefs with the court. After reviewing the parties' submissions the trial court issued a decision finding all of the defendants liable to the Barkers on their timber theft claim and awarded the Barkers compensatory damages in the amount of $23,077.00, punitive damages

pursuant to R.C. 2315.21 in the amount of $11,542.00, and attorney fees in the sum of $32,831.25, for a total of $67,450.25.

{¶14} The Barkers alleged that both Dale and Robert McCoy, individually, claimed an adverse interest in real property owned by the Barkers and that both Dale and Robert employed two other defendants, Clontz and Montgomery, to wrongfully cross over upon their lands and to cut timber on the Barkers' land. The Barkers alleged that all of the defendants personally engaged in the reckless cutting of trees.

{¶15} Robert testified that he was personally out on the 50 acres in 2001 when the timber was cut and that, although he did not personally cut the trees, he was present to assist with the accounting, "I was just out there counting the trees that come out and the loads." He counted approximately ten loads of lumber, with about 20 trees per load. Proceeds from the sale of the trees were placed into an account and Robert used the funds to finance the lawsuit, which included Robert's individual defense and counterclaim. Robert further testified that he and his son, Robbie McCoy, acted together to hire co-defendant Chris Clontz to come and cut the trees on the disputed property. Robert testified several times as being personally involved in the timber cutting operations, although he was not the person who physically cut the trees. For example, Robert admits talking to Barker while cutting timber, "The first time I talked to him was when he came out there when we were cutting. . . . And he started harassing my timber cutters." In response to questions concerning the lack of peripheral tree damage in the area of the tree cutting on the disputed property, Robert affirmed that there was not much damage and testified to his personal role in the tree cutting, "Because when we

cut, we try not to damage other trees. We select cut, we don't clear cut. And we try our best to have our timber cutters not to damage the surrounding land or trees."

**{¶16}** A person is liable to another for trespass if he intentionally enters the land in the possession of the other or causes a thing or a third person to do so. *Francis v. Wilson*, 4th Dist. Washington App. No. 97CA40, 1999WL33507 (Jan. 25, 1999). Thus, Robert McCoy does not have to personally enter the land to be liable in trespass. "One who aids, assists, or advises a trespasser is equally liable with the person actually making the unprivileged entry upon another's land." *Id.* at *3. In *Francis v. Wilson*, Wilson made a similar argument, claiming that he should not be held personally liable for the tree removal damages to the appellees' property because the gravel mining that occurred after the trees were removed was performed by his company, M & J Sand and Gravel Inc., not him in his individual capacity. We rejected his argument and found that the record was replete with testimony that he was involved in the operations that resulted in the trespass onto the plaintiff's property. In his testimony Wilson did not differentiate between activities he personally engaged in and those in which his corporation engaged. And he testified that he personally hired the timber company to cut down trees on the plaintiff's property so that gravel mining operation could ensue. We found that there was plenty of evidence on which the trial court could have based its conclusion that Gale Wilson was individually liable.

**{¶17}** Likewise, here Robert McCoy testified that he was intentionally on the Barker land, directing the timber cutting operations and counting the trees and loads. He and his son personally hired Clontz to perform the tree cutting. Robert McCoy benefited from the proceeds by using a portion to fund his personal legal defense and

counterclaim. Based on our review of the evidence, we find substantial competent, credible evidence to support the trial court's finding that Robert McCoy is individually liable for the damages suffered by the Barkers. We overrule the McCoys' fourth assignment of error.

### D. Punitive Damages

**{¶18}** The McCoys argue that the trial court erred in awarding punitive damages because the Barkers failed to present competent, credible evidence that the defendants acted with actual malice.

**{¶19}** The trial court awarded punitive damages under R.C. 2315.21, finding that the defendants' actions constituted "fraud, malice or insult and especially malice and/or insult." In determining the amount of punitive damages, the court held, "The plaintiffs in this case seek a punitive award of three times the value of the trees inappropriately taken. This court finds that amount to be excessive. But, the court does find a punitive award equaling the value of the trees taken at $11,542.00 to be appropriate based on the record and it is SO ORDERED."

**{¶20}** Interestingly, the Barkers' complaint sought the award of treble damages under R.C. 901.51, which provides that whoever "recklessly" cuts down or destroys trees on the land of another is liable in treble damages.

> "Reckless," for purposes of this statute, carries the same meaning as provided in R.C. 2901.22(C). *Wooten v. Knisely* (1997), 79 Ohio St.3d 282, 290, 680 N.E.2d 1245. Thus, "[a] person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C).

*Spurlock v. Douglas*, 4th Dist. Lawrence App. No. 02CA19, 2003-Ohio-570, ¶ 14. Treble

damages under R.C. 901.51 are distinct from punitive damages. *Tinney v. Tite,* 6th Dist.

Huron No. H–11–006, 2012–Ohio–2347, at ¶ 19. A trial court's determination of

"recklessness" and its decision to award treble damages pursuant to that statute is

reviewed under the general some competent credible evidence "manifest weight of the

evidence" standard of review *Spurlock,* at ¶ 17, i.e. the burden of proof is by a

preponderance of the evidence.

**{¶21}** In order to recover "punitive" damages under R.C. 2315.21, as opposed to

"treble" damages under R.C. 901.51, a plaintiff must prove that the acts or omissions of

the tortfeasor demonstrate malice, fraud, oppression, or insult. R.C. 2315.21(B); *Athens*

*Cty. Regional Planning Comm. v. Simms*, 4th Dist. Athens App. No. 05CA15, 2006-

Ohio-2342, ¶ 28. The burden of proof necessary to recover punitive damages is clear

and convincing evidence. R.C. 2315.21(C)(3); *Id.* In *State v. Schiebel*, 55 Ohio St.3d 71,

74, 564 N.E.2d 54 (1990) the Supreme Court of Ohio noted:

> The standard of "clear and convincing evidence" is defined as "that measure or degree of proof which is more than a mere 'preponderance of the evidence', but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."

> ***

> Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof. (Citations omitted.)

Punitive damages do not have to be specially pleaded or claimed as long as there are

sufficient facts alleged in the complaint from which the essential element of malice may

be inferred. *Id.* at ¶ 30; *Lashua v. Lakeside Title & Escrow Agency*, 5th Dist. Stark App.

No. 2004CA237, 2005-Ohio-1728; Civ.R. 15(B); Civ.R. 54(C). Actual malice is "that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." *Id* at ¶ 29 quoting *Preston v. Murty*, 32 Ohio St.3d 334, 512 N.E.2d 1172 (1987). Thus, for purposes of determining treble damages under R.C. 901.51, recklessness is characterized as a "heedless indifference", while for purposes of determining punitive damages under R.C. 2315.21, malice is characterized as a "conscious disregard.

{¶22} When the Barkers submitted their damages exhibits to the court at trial, they requested "punitive" damages for theft and intentional trespass in at least three times the theft of the trees, but did not specifically refer to either R.C. 901.51 or R.C. 2315.21 in their request. In subsequent briefing to the court, the McCoys objected to the Barkers' request for punitive or treble damages under R.C. 2315.21, arguing that there was no evidence of fraud, malice or insult. The Barkers responded and characterized the damages as "treble" and argued that the court had the ability to "grant treble damages as it relates to the loss of the trees" and that "evidence as to the value of the trees was submitted by the Plaintiffs which amount should be tripled by law."

{¶23} The Barkers refer to treble damages and punitive damages interchangably through the course of the litigation. Their complaint contains facts sufficient to infer malice. In paragraph 5, the Barkers alleged that they advised the defendants that they were in fact cutting timber on Barker property, but the defendants continued to recklessly cut down and destroy trees. In paragraph 6, they allege that the defendants ignored what the Barkers told them and continued to wrongfully sell the timber. Thus,

the complaint contains sufficient allegations that the defendants' behavior could be inferred to constitute conscious disregard for Barkers' property rights. Additionally, when the Barkers submitted their request for damages, they specifically requested an award of punitive damages.

**{¶24}** Moreover, the McCoys do not object to the award of punitive damages on the grounds that they were not properly pleaded or claimed, but on the grounds that the award was against the manifest weight of the evidence. In response to the McCoys' argument, the Barkers argue there was sufficient evidence in the deposition testimony of Robert McCoy for the court to conclude that punitive damages were appropriate.

**{¶25}** Robert McCoy testified that, prior to the commencement of the Barker lawsuit, his brother Dale had hired attorney William Wray Bevens to help the McCoys establish the boundary lines of their property. Bevens agreed with Crabtree's survey concerning the relative location of the McCoys' and Barkers' property boundaries. Robert McCoy testified that Bevens' agreement with Crabtree's survey, "was one of the reasons I pulled him off of this case." After learning that Dale's attorney had agreed with Crabtree's boundary lines and had suggested they resolve any dispute through the court, Robert McCoy testified that he contracted with Clontz to cut timber on the disputed property. He personally walked out onto the property to show Clontz where to cut, insisting that "the disputed area wasn't disputed. It's our land." McCoy also testified that he would have disregarded the trial court's injunction:

Q. How long did the cutting proceed?

A. Until these guys got an injunction. If I would have been cutting it, I'd still been cutting it because it's our property.

Q. You would have ignored the court order?

A. Yes, because it is nobody else's property.

{¶26} However, McCoy conceded that the tree cutter he hired did comply with the court order and stopped cutting. There was also evidence in the record that Robert McCoy confronted the Barkers while McCoy was carrying a gun and told the Barkers not to use the access road. And that he confronted the Barkers' surveyor and told him to leave the disputed property. Crabtree testified that he was run off the property "violently so."

{¶27} After the trial court issued a judgment in favor of the Barkers on their claim to quite title, Robert McCoy installed a locked gate to prevent the Barkers from accessing the property, continuing to insist that he owned it:

Q. Have you erected a gate and put a fence up with a lock on it?

A. Yes, I did.

Q. When did you do that?

*                    *                    *

A. We had a cable up first, and they kept driving around the cable. So then I erected the gate. We did that when the problems all started.

Q. What problems?

A. The problems with the encroachment by the Barkers.

Q. You realize that there is a Court Order on ordering that that property is their property; do you know that?

A. I could care less about your Court Order, okay.

Q. So you are not going to take that gate down - -

A. No, sir.

Q. - - unless the Court specifically orders you to do so?

A. If the Court does, he had better have a good reason for doing it. That's my property.

\*                    \*                    \*

Q. If he tells you to take the gate down, you will do so?

A. No.  Why do you want the gate taken down?

Q. It is our [Barkers'] property. We need access.

A. No. No.

**{¶28}** Because Robert McCoy would not remove the gate, the Barkers filed a motion for contempt.  After the contempt hearing, the court issued an order that reflected an agreement the parties had reached concerning the gate and fence and ordered both parties access to the road and a key to the gate. The court reserved a determination as to the assessment of any costs against the parties until the final verdict on damages.

**{¶29}** The evidence in the record establishes that the McCoys were aware that an attorney they had hired believed the disputed property belonged to the Barkers, but they decided to cut timber in the disputed area without seeking a boundary determination through the court.  Even after a preliminary injunction was issued, Robert McCoy testified that if he were physically cutting the timber, he would have continued to remove trees and ignored the court order.  And, after the property dispute was resolved in Barkers' favor, but before the damages portion of the claim was heard, McCoy installed a fence and locked gate to prevent the Barkers from accessing their property. We find that these factors establish competent, credible evidence of the McCoys' ill will towards the Barkers. Therefore, we find that the trial court's judgment regarding punitive damages is supported by the manifest weight of the evidence.

**{¶30}** We overrule the McCoys fifth assignment of error.

E. Attorney Fees

**{¶31}** Finally, the McCoys contend that the trial court erred in awarding attorney fees because the Barkers did not present any evidence of their reasonableness. The Barkers respond that they presented testimony as to the amount of the attorney fees billed and produced the bills as an exhibit. The record contains no evidence of any testimony by an attorney concerning the reasonableness of the fees, nor did the Barkers produce affidavit testimony from their attorney or an independent attorney in the community concerning the reasonableness of the fees.

**{¶32}** We review the trial court's award of attorney fees under an abuse of discretion standard. *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146, 569 N.E.2d 464 (1991). An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 464 (1991). An attorney seeking to prove the reasonableness of attorney fees carries the burden of proof. Merely submitting a copy of billing records will not suffice. *Whitaker v. Kear*, 123 Ohio App.3d 413, 424, 704 N.E.2d 317 (4th Dist. 1997); *Tipton v. Directory Concepts, Inc.,* 5th Dist. Richland App. No. 13CA61, 2014-Ohio-1215, ¶ 18 (attorneys can either offer their own testimony as to the reasonableness of their fees or present testimony from a disinterested attorney); *Grove v. Gamma Center,* 3rd Dist. Marion App. No. 9-12-41, 2013-Ohio-1734, ¶ 31 ("merely submitting an attorney's itemized bill is insufficient to establish the reasonableness of the amount of work billed.")"[T]he court should consider evidence such as the time and labor necessary for the service requested, the customary fees in the locality for similar

services, the results obtained, and the experience, reputation and ability of the attorney." *Whitaker* at 424.

**{¶33}** The trial court's order states that the necessity and reasonableness of the attorney fees was shown through "the extensive record of the case" and that the conditions set forth in *Brookover v. Flexmag Indus. Inc.*, infra, have been met. Yet in *Brookover*, the trial court held a hearing on the reasonableness of the attorney fees and heard testimony from at least one of the attorneys handling the case and two other independent attorneys who served as expert witnesses before awarding attorney fees. *Brookover v. Flexmag Indus. Inc.*, 4th Dist. Washington App. No. 00CA49, 2002-Ohio-2404, ¶¶ 216-220.

**{¶34}** Here, the Barkers presented no testimony, either through a deposition or affidavit, to establish the reasonableness of the attorney fees requested. As a result, even though the trial court's familiarity with the extensive record would have given it an understanding of some of the factors that are included in calculating attorney fees, such as the complexity of the case, the number of witnesses, and the length of the trial, the trial court had no evidence upon which to determine the reasonableness of the rates charged. Any award of attorney fees under the circumstances was arbitrary and is therefore an abuse of discretion.

**{¶35}** We affirm the McCoys' sixth assignment of error and reverse the trial court's award of attorney fees.

## IV. CONCLUSION

**{¶36}** The trial court properly entered judgment for the Barkers on their claim to quiet title. The trial court's judgment on Barkers' alternative legal theory of ownership

through adverse possession, is thereby rendered moot. The trial court properly awarded

damages against Robert McCoy, individually, and properly assessed punitive damages.

However, because there was no evidence offered concerning the reasonableness of the

attorney fees, we reverse the trial court's award of them in the amount of $32,831.25

and remand with instructions to enter a new judgment denying that award.

JUDGMENT AFFIRMED, IN
PART AND REVERSED, IN PART,
AND REMANDED.

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART, AND REMANDED.  Appellants and Appellees shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pike County Court of Common Pleas to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, J. & *Klatt, J.:  Concur in Judgment and Opinion.


For the Court



BY: _____
William H. Harsha, Judge



### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**


* William A. Klatt, J. of the Tenth Appellate District, sitting by assignment in the Fourth Appellate District.