[Cite as *Scioto Land Co. v. Knauff*, 2023-Ohio-4821.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

SCIOTO LAND COMPANY, LLC,      :

                                 :      Case No. 22CA8

    Plaintiff-Appellee,      :

                                 :

    v.      :      <u>DECISION AND JUDGMENT ENTRY</u>

                                 :

JOSHUA R. KNAUFF,      :

                                 :

    Defendant-Appellant.      :      **RELEASED: 12/26/23**

                                 :

<u>APPEARANCES:</u>

James R. Kingsley, Circleville, Ohio, for Appellant.

James S. Savage and Douglas J. Segerman, Luper Neidenthal & Logan, Columbus, Ohio, for Appellee.

Wilkin, J.

{¶1} Appellant, Joshua R. Knauff ("Knauff"), is appealing a Ross County Court of Common Pleas judgment entry that granted appellee, Scioto Land Company, LLC, ("Scioto") $12,356.00 in compensatory damages, which was trebled pursuant to R.C. 901.51 to equal $37,068.00, $5,698.00 in punitive damages, and $23,134.62 in attorney fees for a timber theft case.

{¶2} Scioto filed a complaint alleging that Knauff had stolen timber from its property. The trial court awarded Scioto $42,766.00 in both compensatory and punitive damages and $23,134.62 in attorney fees. Knauff appeals asserting four assignments of error: (1) The trial court erred when it awarded treble damages for cutting trees, (2) The trial court erred when it awarded damages based on plaintiff's expert who testified to a flawed sawmill evaluation, (3) The

trial court erred when it did not require plaintiff to elect its remedy between statutory and common law tort, and (4) the trial court erred when it struck Mr. Comstock's valuation.  Scioto filed a reply brief.

{¶3} After reviewing the parties' arguments, the evidence, and the applicable law, we affirm in part and reverse in part the trial court's judgment, and remand the matter for further consideration consistent with our decision.

## I.      FACTS AND PROCEDURAL BACKGROUND

{¶4} On August 13, 2020, Scioto filed a four-count complaint against Knauff alleging that (1) Knauff trespassed on Scioto's property causing Scioto damage, (2) Knauff was liable to Scioto under R.C. 901.51 for recklessly removing trees from Scioto's property causing damage, (3) Knauff converted Scioto's timber by cutting trees from Scioto's property and selling them, and (4) Knauff was unjustly enriched by selling timber from Scioto's property and retaining the proceeds.  Scioto sought damages in excess of $25,000.  On November 12, 2020, Knauff filed an answer denying many of Scioto's allegations and moved the court to dismiss Scioto's complaint.

{¶5} Scioto filed a motion for summary judgment on all claims alleging that Knauff admitted to liability to all issues, except that he was reckless in cutting down the trees on Scioto's property.  Scioto alleged that it suffered a loss of $12,356.00 as a result of Knauff cutting down trees on its property.  Scioto argued that there was no genuine issue of material fact that Knauff was recklessly, if not intentionally, cutting down trees on Scioto's property. Specifically, Scioto maintained that Knauff's crew walked a quarter of a mile

through Scioto's property before they reached some of the trees that they cut down. Therefore, Scioto sought a judgment of treble damages under R.C. 901.51, which permits recovery for persons who "recklessly cut down * * * tree[s][.]" Knauff filed a memorandum contra. Knauff alleged that certain material facts were disputed, including whether his crew was reckless in cutting down the trees on Scioto's property. On June 21, 2021, the trial court issued a judgment granting Scioto partial summary judgment on Scioto's conversion claim.

{¶6} The court held a trial on the remaining issues. Both parties presented expert witnesses offering opinions as to the value of the trees taken from Scioto's property. Scioto's expert, Don Rawn, testified that Scioto suffered $12,356.00 in compensatory damages. In contrast, Knauff's expert, George Comstock, testified that Scioto's damages were $4,798.45.

{¶7} The trial court issued its decision and judgment entry finding Knauff liable for conversion of all trees and trespass. The court further found that Scioto suffered $12,356.00 in compensatory damages, which was the "market value of the trees[.]" Because the court found that Knauff's actions in cutting down the trees were reckless, the court trebled Scioto's compensatory damages under R.C. 901.51 for a total of $37,068.00. The court also found that Knauff acted with "actual malice" in cutting Scioto's trees and awarded $5,698.00 in punitive damages. Finally, the court awarded Scioto $23,134.62 in attorney fees. It is this judgment that Knauff appeals.

## II.    ASSIGNMENTS OF ERROR

I.     THE TRIAL COURT ERRED WHEN IT AWARDED TREBLE DAMAGES FOR CUTTING TREES

II.    THE TRIAL COURT ERRED WHEN IT AWARDED DAMAGES BASED ON PLAINTIFF'S EXPERT WHO TESTIFIED TO A FLAWED SAWMILL EVALUATION

III.   THE TRIAL COURT ERRED WHEN IT DID NOT REQUIRE PLAINTIFF TO ELECT ITS REMEDY BETWEEN STATUTORY AND COMMON LAW TORT.

IV.    THE TRIAL COURT ERRED WHEN IT STRUCK MR. COMSTOCK'S VALUATION

## ASSIGNMENT OF ERROR I

{¶9} Knauff argues that the trial court erred when it awarded Scioto treble damages for cutting trees along the boundary.  Knauff alleges that he "took all reasonable precautions" to determine the boundary between his property and Scioto's.  Knauff claims that he sought to define the property line by using a compass and a string.  Using his compass, Knauff alleged that he correctly located the first pin, but misidentified the second pin.  The correct pin was 30 feet from the one that he had identified.  Therefore, when Knauff connected the pins with the string, he failed to properly identify the property line between Knauff's property and Scioto's.  As a result of Knauff's mistake, he maintains that his actions of cutting down the trees, with the exception of the five walnut trees located deeper into Scioto's property, did not fit the definition of reckless, which is acting with heedless indifference to the consequences.  Rather, his actions in mismarking the property line were mere negligence that resulted in cutting down the trees on Scioto's property.  Consequently, the trial court erred in trebling his

damages under R.C. 901.51, which allows such damages only if there is a finding that the trees were recklessly cut.

{¶10} In response, Scioto maintains that the trial court's finding of recklessness is supported by the manifest weight of the evidence.  Scioto claims that Knauff's actions in mismarking the property boundary were reckless is supported by the following: (1) Knauff could have used the auditor's website to properly locate the boundary, but did not; (2) Knauff could have used an available phone app that would have properly located the boundary, but did not, (3) Knauff ignored orange paint marks on trees that clearly marked the boundary, (4) Knauff failed to flag the trees on the boundary, (5) Knauff ignored the iron stake and ancient fence that marked the boundary between the properties, (6) Knauff changed the methodology of the cut when he cut the most valuable trees on Scioto's property, and finally (7) Knauff cut trees at night to avoid detection.

A.  Law

1.  Standard of Review

{¶11} "A trial court's determination of 'recklessness' and its decision to award treble damages pursuant to that statute is reviewed under the general some competent credible evidence 'manifest weight of the evidence' standard of review[.]"  (Citation omitted) *Barker v. McCoy*, 4th Dist. Pike No. 14CA849, 2015-Ohio-3127, ¶ 20, quoting *Spurlock v. Douglas,* 4th Dist. Lawrence No. 02CA19, 2003-Ohio-570, ¶ 17.  In making an evaluation "[t]he trier of fact 'is free to believe all, part or none of the testimony of any witness,' and we 'defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best

position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility.' " *State v. Bennett*, 4th Dist. Ross No. 21CA3751, 2023-Ohio-2734, ¶ 56, quoting *State v. Dillard*, 4th Dist. Meigs No. 13CA9, 2014-Ohio-4974, ¶ 28, citing *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23.

### 2. R.C. 901.51

**{¶12}** R.C. 901.51 states:

> No person, without privilege to do so, shall *recklessly* cut down, destroy, girdle, or otherwise injure a vine, bush, shrub, sapling, tree, or crop standing or growing on the land of another or upon public land.
> In addition to the penalty provided in section 901.99 of the Revised Code, *whoever violates this section is liable in treble damages for the injury caused.* (Emphasis added.)

> R.C. 2901.22(C) states:

> A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.

### B. Analysis

**{¶13}** We begin our analysis by recognizing that Knauff admitted that he was responsible for cutting down all the trees in question and all of the trees were on Scioto's property. He further admits that his actions were reckless in cutting down the five walnut trees that were located deep into Scioto's property. The question is whether Knauff was reckless in cutting the remainder of the trees. Knauff claims that his failure to properly identify the property line, which

resulted in the trees being cut from Scioto's property was not reckless, but was rather merely a mistake. Therefore, he claims, his actions were negligent, not reckless.

{¶14} The evidence indicated that in April 2020, Scioto received multiple phone calls from neighbors who believed that based on equipment sounds someone was cutting trees on Scioto's property at night. Testimony established that cutting trees at night was "highly unusual." And there is evidence that the stumps discovered in April 2020 were "freshly" cut.

{¶15} In order to determine whether the stolen trees were on Scioto's property, Mike Bell, a Scioto employee, acquired a copy of the survey plats of both Knauff's property and Scioto's property from the Ross County auditor's office. The evidence indicated that acquiring a survey plat of the properties in question was a reliable and accurate method for locating physical markers and determining property lines. Bell then walked Scioto's property near its boundary with Knauff's property and using the information from these survey plats, he accurately identified the property line by locating the pin *and* a historical fence from the survey. Bell discovered the remnants of the historical fence, which was made of wire, using a metal detector. Using this boundary, Bell determined that all the trees cut in this case were on Scioto's property.

{¶16} Bell also testified that marking trees with orange paint is a method used in southern Ohio to identify property lines. Bell stated that Scioto's property line with Knauff's property was "consistently marked" by trees bearing orange paint markings prior to when Scioto's trees were cut down. At least one of the

marked trees was within 20 to 30 feet from a skid trail that began on Knauff's property and continued approximately ¼ of a mile into Scioto's property.

{¶17} Knauff testified that he has been a "logger" for 25 years and agreed that marking trees with orange paint is a method used by property owners in southern Ohio to mark property lines. He also admitted that he could have accurately identified the property line between his property and Scioto's using GPS.[1] However, when asked how he identified the property line to ensure that the trees he was ordering his crew to cut were on his property, he did not use GPS or a survey plat from the Auditor's office. Rather, he maintained that he followed his compass "by turning the degrees that it called out on the deed." Knauff testified that he saw "no farm fence[,]" but in the same sentence acknowledged seeing "bits and pieces of a barb wire."

{¶18} Furthermore, Knauff acknowledged, when he was marking the trees to be cut he saw trees painted with orange dots that defined Scioto's property, but "didn't really pay much attention to [Scioto's orange] dots as I did as my dial on my compass."

{¶19} Based on the aforementioned testimony and various exhibits, we find there is some evidence supporting the trial court's holding that Knauff acted recklessly when marking the boundary between his property and Scioto's. Therefore, we overrule Knauff's first assignment of error.

---

[1] GPS or the Global Positioning System is "a U.S.-owned utility that provides [civilian and military] users with positioning * * * services." www.gps.gov.gov/systems/gps/.

ASSIGNMENT OF ERROR II

**{¶20}** Knauff asserts that "sawmill" valuation relied upon by the trial court is not the proper method of valuing timber for a conversion claim. Knauff claims the law does not recognize a sawmill value of timber. He asserts "stumpage" is the proper measure of damages in this case. Knauff maintains that stumpage is the price paid for "a license to cut trees."

**{¶21}** Knauff claims that his expert testified that "stumpage" was the proper method for determining damages in this case, while Scioto's expert testified that "the fair market value of the tree once delivered to the sawmill" was the proper method to determine the damages herein. Knauff claims that market value of a tree delivered to the mill is improper because it includes "the cost of production of goods which must be deducted from the sales price."

**{¶22}** Knauff claims that "[e]ven if sawmill valuation is a proper measure of damages, an element of that test is the cost of removal and delivery to the sawmill which was not proven." Knauff claims that

> [d]amages must reflect the actual cost of doing business. There was a cost to cut and deliver the timber which was not addressed. Therefore, the damages are artificially high. The court erroneously awarded the finished mill value of the board feet in a tree and ignored the cost to the landowner to cut and deliver, as well as the profit of the mill.

**{¶23}** In response, Scioto maintains its expert, Don Rawn, testified to the "stumpage" value of Scioto's timber that was taken by Knauff. Quoting *Brand v. Ogle*, Scioto also maintains " 'the measure of damages in a conversion action is the value of the property at the time of the conversion[,]' " using market value.

2020-Ohio-3219, 155 N.E.3d. 37 (4th Dist.), ¶ 15, quoting *Wright v. Miller*, 4th Dist. Highland No. 752, 1991 WL 37926, *4 (Mar. 11, 1991). Scioto claims that "either way you analyze it[,]" the damages are correct.

### A. Law

#### 1. Standard of Review

{¶24} Knauff's second assignment of error challenges the trial court's failure to properly determine the measure of damages for the stolen timber. "The adoption of the appropriate measure of damages presents a legal question which we review de novo." *Outer Space Signs, L.L.C. v. Clagg*, 4th Dist. Jackson No. 12CA11, 2013-Ohio-4350, ¶ 7, citing *Werr v. Moccabee,* 4th Dist. Ross No. 07CA2986, 2008-Ohio-595, ¶ 8. This means we will afford no deference to the trial court's determination of the appropriate measure of damages for the wrongfully removed timber. *McNichols v. Gouge Quality Roofing, LLC.*, 2022-Ohio-3294, 195 N.E.3d 1119, ¶ 25 (4th Dist.), citing *Snyder v. Watkins,* 4th Dist. Athens No. 08CA3006, 2008-Ohio-4909, ¶ 10.

#### 2. Damages in a Timber Theft Case

{¶25} In *Denoyer v. Lamb*, the First District Court of Appeals recognized that "[t]imber cut or to be cut for commercial purposes may be valued in several ways: "stumpage" is the value of the undisturbed timber standing or lying on the land; add to that the cost of felling and hauling, to find the value of the logs; add to that, again, all costs of manufacture, to obtain the value of the finished product." (Footnote omitted.) 22 Ohio App. 3d 136, 140, 490 N.E.2d 615 (1st Dist. 1984. Relying primarily upon *Denoyer*, this Court held that "when a

trespasser's cutting of trees represents part of the damage done to the property of another, the stumpage value of the trees taken is a proper measure of damages." *Francis v. Wilson*, 4th Dist. Washington No. 97CA40, 1999 WL 33507, * 7, citing *Denoyer* at 140, 490 N.E.2d 615, 4 Restatement of the Law 2d, Torts (1979), Section 929(2).

### B. Analysis

{¶26} Knauff claims that the trial court erred in relying on Rawn's valuation for Scioto's timber because "the cost of production of goods" must be deducted from the sales price of the goods to get the stumpage value. Although Knauff does not explain what he means by the "cost of production[,]" it appears that he is referring to his crew's cutting and hauling away of Scioto's trees. Knauff's argument ignores that stumpage, as explained in *Denoyer*, is the price paid by the purchaser "to enter upon the land and *to cut* down and *remove* the trees[.]" (Emphasis added.) *Denoyer*, 22 Ohio App. 3d at 140, 490 N.E.2d 615 (1st Dist. 1984). Therefore, we find that stumpage's "price to cut" implicitly takes into account, not only the value of the trees, but the cost of cutting and hauling the trees.

{¶27} In valuing Scioto's trees, Rawn multiplied the board feet of the timber taken by the value of the various species of trees set out in the Ohio Timber Price Report ("report") to conclude that Scioto's timber should be valued at $12,356.00. The report "is a *compilation of data* received when Ohio forest products companies are surveyed as to what *prices they are paying* for material. The report lists price data for sawlogs delivered to the mill ad for

*stumpage*." (Emphasis added.)  Ohio Timber Price Report ("report") Ohio Woodland Stewards Program (osu.edu).  Thus, the pricing data in the table is based on the price paid by companies for timber, which necessarily includes the costs of cutting and hauling of tree(s) to the mill.  This valuation is consistent with our definition of stumpage discussed supra.  Therefore, we find that Rawn's valuation of Scioto's timber was its stumpage value.

{¶28} Although the trial court's decision referenced Rawn's valuation as the "market value" of the timber, it was in fact stumpage.  Therefore, we reject Knauff's argument that the trial court erred by relying on Rawn's valuation because it included "the cost of production."

{¶29} Without support of any legal authority, Knauff alternatively claims that if the trial court did not err in its valuation of Scioto's trees, Scioto's damages should be reduced by the cost Knauff incurred in cutting and hauling the trees from Scioto's property to the mill.  We disagree.

{¶30} "In an action for conversion against an intentional wrongdoer, the plaintiff may recover the full value of the property, without any deduction for the wrongdoer's expenses based on the rationale that a thief may not gain by his or her own wrong."  18 Ohio Jurisprudence 3d, Conversion and Replevin, Section 37, fn 4, citing *Tracy v. Athens & Pomeroy Coal & Land Co.*, 115 Ohio St. 298, 152 N.E. 641 (1926); *Brady v. Stafford*, 115 Ohio St. 67, 152 N.E. 188 (1926).

{¶31} In the instant case, the trial court found that Knauff acted with "conscious disregard for the rights of [Scioto] in a manner that had a great probability of causing, and in fact did cause, substantial harm."  Knauff should not

receive a gain for his own wrongdoing.  Therefore, we find that Knauff is *not* entitled to any credit to Scioto's damages for the expenses associated with the cutting and hauling of Scioto's trees.

**{¶32}** Accordingly, we overrule Knauf's second assignment of error.

ASSIGNMENT OF ERROR III.

**{¶33}** In his third assignment of error, Knauff asserts that the trial court committed prejudicial error when it failed to require Scioto to elect between recovering either treble damages under R.C. 901.51 or punitive damages. Knauff asserts that an election between the treble damages and punitive damages is necessary to prevent double recovery.  By way of analogy, Knauff cites *Kulch v. Structural Fibers Inc.*, 78 Ohio St.3d 134, 677 N.E.2d 308 (1997), in which the court held that the plaintiff had to elect between Whistleblower statutory damages and common law tort damages because collecting both would permit double recovery.

**{¶34}** In response, Scioto asserts that the treble damages under R.C. 901.51 are distinct from punitive damages so no election between the two was required as this court held in *Barker*, 4th Dist. Pike No. 14CA849, 2015-Ohio-3127.  Scioto maintains that Knauff acted recklessly justifying treble damages under R.C. 901.51 and with actual malice justifying punitive damages.

A.  Law

1.  Standard of Review

**{¶35}** [W]hether a trial court applies the correct legal standard is a question of law we review de novo.  *Brand*, 2020-Ohio-3219, 155 N.E.3d 37 at ¶

9 (4th Dist.), citing *In re Name Change of Rowe*, 4th Dist. Scioto No. 18CA3837, 2019-Ohio-4666, 135 N.E.3d 782, ¶ 16.

## 2. Election of Remedies

**{¶36}** Historically, "[t]he common law doctrine of election of [ ] remedies" had a "procedural" aspect and "substantive" aspect. *Olympia Hotels Corp. v. Johnson Wax Dev. Corp.*, 908 F.2d 1363, 1371 (7th Cir. 1990).[2] In this case, we are concerned with only the substantive aspect of the election of remedies doctrine, which provides "that the election of one remedial right bars pursuit of another when one right is inconsistent with the other[.]" *Saunders v. Holzer Hosp. Found.*, 4th Dist. Gallia No. 08CA11, 2009-Ohio-2112, ¶ 19, quoting *Stowers v. Baron,* 65 Ohio App.2d 283, 285, 418 N.E.2d 404 (6th Dist. 1979), citing *Frederickson v. Nye*, 110 Ohio St. 459, 144 N.E. 299 (1924). In this context the "purpose of the doctrine of election of remedies is to prevent double recovery[.]" *Id.* at ¶ 19, citing *Davis v. Rockwell Internatl. Corp.*, 596 F.Supp. 780 (N.D.Ohio 1984). For example, "an action in rescission and one in money damages are different and inconsistent remedies as a matter of law." *Vollett v. Remy*, 4th Dist. Ross No. 1918, 1993 WL 415485, *2 (Oct. 15, 1993). "The prerequisites to application of the doctrine are: (1) the existence of two or more

---

[2] "The procedural aspect derive[d] from the overriding goal of common law pleading, which was by successive rounds of pleading to narrow the issues until there was just one for trial." *Id.*, citing 5 Wright & Miller, Federal Practice and Procedure § 1202, at p. 61 (1969). However, the procedural aspect of the election of remedies "has been modified substantially by the Civil Rules, including Civ.R. 8(A), which permits pleading for relief in the alternative, or of different types [.]" *Fenstermaker v. Elwood,* 3d Dist. Hancock, No. 5-83-34, 17 Ohio App.3d 250 (1984). "Since Civ.R. 8(A) is procedural in nature, it [ ] supersede[s] common law doctrines regarding the election of remedies." *Jacobs v. Vollett v. Remy*, 4th Dist. Ross No. 1918, 1993 WL 415485, *3 (Oct. 15, 1993).

remedies; (2) the inconsistency of such remedies; and (3) a choice of one of them." *Id.* at ¶ 19, quoting *Davis v. Rockwell Internatl. Corp.* (N.D.Ohio 1984), 596 F. Supp 780.

### B.  Analysis

#### 1.  Election of Remedies as a Defense

**{¶37}** On appeal, Knauff asserts the election of remedies as a defense to Scioto's recovery of both treble damages under R.C. 901.51 and common law punitive damages.  "It is axiomatic that election of remedies is an affirmative defense that must be pleaded, or it is waived."  *Richey Barrett Co. v. B.E.C. Const., Inc.*, 8th Dist. Cuyahoga No. 68437, 1995 WL 739616, *2, citing Civ.R. 8(C) and 12(H); *Mossa v. W. Credit Union, Inc.*, 84 Ohio App.3d 177 (10th Dist. 1992).  "However, under Civ.R. 15(B) when an issue is tried without objection and consented to, [a reviewing] court may consider the matter."  *Id.*, citing *Chandler v. General Motors Acceptance Company*, 68 Ohio App.2d 30 (1st. Dist. 1980).

**{¶38}** Scioto's complaint sought treble damages under R.C. 901.51 *and* punitive damages.  Knauff's answer did *not* assert election of remedies as a defense.  However, in closing arguments Knauff did argue that Scioto needed to elect treble damages or punitive damages, and Scioto made no objection to this argument.  Therefore, we find that Knauff did not waive the ability to argue the election of remedies as a defense.

#### 2.  The Election of Remedies and Double Recovery

##### a.  Ohio Law

**{¶39}** Enacted in 1974, R.C. 901.51 provides:

No person, without privilege to do so, shall recklessly cut down, destroy, girdle, or otherwise injure a vine, bush, shrub, sapling, tree, or crop standing or growing on the land of another or upon public land.
In addition to the penalty provided in section 901.99 of the Revised Code, whoever violates this section is liable in treble damages for the injury caused.

In 1984, the First District Court of Appeals reviewed a timber theft case in *Denoyer*, 22 Ohio App. 3d 136, 140-41, 490 N.E.2d 615 (1st Dist.1984).   In *Denoyer* the court stated:

R.C. 901.51 creates a new remedy. It makes a person liable "in treble damages for the injury caused" by recklessly cutting, destroying or otherwise injuring shrubs, saplings, trees, etc., on the land of another, in addition to being guilty of a minor misdemeanor, R.C. 901.99. The owner's right to recover treble damages is obviously a new right, separate and apart from his right to recover punitive damages, because it requires proof that the destructive act or acts were done "recklessly" (presumably as defined in R.C. 2901.22[C]) rather than with actual malice.

*Id.* at 141; See also *Barker*, 4th Dist. Pike No. 14CA849, 2015-Ohio-3127, ¶ 21.

However, *Denoyer* also made clear that "[w]hether this new statutory right [under R.C. 901.51] is in addition to or an alternative to the common-law right to punitive damages *is a question we do not reach and do not decide in this case.*" (Emphasis added.)  *Id.*

**{¶40}** In fact, this court and most other Ohio appellate districts have never answered this question.  The only case that we could find that discusses this precise issue is the Fifth District Court of Appeals, which simply stated that: "the appellant [therein] *could not recover both* punitive damages and statutory treble

damages (under R.C. 901.51), *i.e., a double recovery* which this court has proscribed in a similar situation." (Emphasis added.) *Nelson v. Frontier Power Co.*, 5th Dist. Coshocton No. 89-CA-17, 1990 WL 70091, *2 (May 21, 1990), citing *Kilgore v. Schindler*, 5th Dist. Richland No. CA-2665, 1989 WL 87039 (July 24, 1989).

{¶41} However, the Supreme Court has held that "[a] statute which imposes treble damages as a penalty for misconduct is obviously intended to *prevent* or *discourage* such *activity*, or, in other words, to conform the public's conduct." (Emphasis added.) *French v. Dwiggins*, 9 Ohio St. 3d 32, 36, 458 N.E.2d 827 (1984). And, the Twelfth District Court of Appeals has recognized that the purpose of R.C. 901.51, which permits treble damages in a timber theft case, is "to *deter* individuals from trespassing on another's property and destroying the vegetation existing on the property." (Emphasis added.) *Miller v. Jordan*, 87 Ohio App. 3d 819, 825, 623 N.E.2d 219 (12th Dist.1993). Thus, the purpose of R.C. 901.51 is the same as the purpose of punitive damages, which "is not to compensate a plaintiff, but to punish and *deter* certain conduct." (Emphasis added.) *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 651, 635 N.E.2d 331 (1994). From this case law, it is very reasonable to conclude that because R.C. 901.51 and punitive damages are both intended to deter conduct, recovery of both would result in an impermissible double recovery for a plaintiff in a timber theft case.

b.  Foreign Jurisdictions

**{¶42}** A clear majority of state supreme courts have held that in timber theft cases recovery of both statutory treble damages and punitive damages are not permitted because doing so allows double recovery of damages by the plaintiff. For example, the Vermont Supreme Court has held that

> [t]he State cannot * * * recover both multiple damages under § 3606 and punitive damages for the destruction of the trees. As explained above, *§ 3606's treble-damages provision serves*, in part, *to deter* tree piracy by punishing one who unlawfully cut another's trees. *Given this punitive component of § 3606, awarding* the State *both treble damages and punitive damages here would amount to an improper double recovery*, because the State would then recover twice for the same injury— the wrongful cutting of its trees. (Footnote omitted and Emphasis added.).

*State v. Singer*, 180 Vt. 104, 111–12, 904 A.2d 1184, 1190-1191 (2006), ¶ 15. Similar to Vermont, all but one of the State Supreme Courts that have addressed this issue, which includes Arkansas, Iowa, and Minnesota, have held that permitting a plaintiff in a timber theft/damage case to recover treble statutory damages for timber *and* punitive damages is impermissible because it allows double recovery. *See Stoner v. Houston,* 265 Ark. 928, 582 S.W.2d 28, 30–31 (Arkansas 1979); *Johnson v. Tyler,* 277 N.W.2d 617, 618-19 (Iowa 1979); *Johnson v. Jensen,* 446 N.W.2d 664, 666 (Minn.1989).[3] Furthermore, appellate

---

[3] Similar to the timber theft/damage cases, in cases involving possible recovery of both statutory treble and punitive *not* involving timber theft, many of the same state supreme courts and other courts have recognized that "[w]hen a plaintiff is entitled to both punitive damages in conjunction with a common law claim for relief and to treble damages under a statutory scheme, the majority of jurisdictions employ a version of the election of remedies doctrine to prevent double recovery of enhanced damages." *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 908 (Tenn. 1999). *See also Harris v. Manor Healthcare Corp.*, 111 Ill. 2d 350, 361, 489 N.E.2d 1374, 1379 (Ill. 1986); *Lexton-Ancira Real Est. Fund, 1972 v. Heller*, 826 P.2d 819, 822 (Colo. 1992); *Bjorgen v. Kinsey*, 466 N.W.2d 553, 561–62 (N.D. 1991); *Johnson v. Tyler*, 277 N.W.2d 617, 618 (Iowa 1979); *Wagoner v. Bennett*, 1991 OK 70, ¶ 12, 814 P.2d 476, 479; *Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 367 (Tex. 1987).

courts in California and Illinois have also held that in a timber theft case recovery of treble and punitive damages are not allowed because it is double recovery. *See Baker v. Ramirez*, 190 Cal.App.3d 1123; 235 Cal.Rptr. 857, 866 (1987); *Marsella v. Shaffer,* 320 Ill.App.3d 134, 257 Ill.Dec. 753, 754 N.E.2d 411 (2001).

**{¶43}** Only the West Virginia Supreme Court held that recovery of both treble and punitive damages is permissible. *Bullman v. D & R Lumber Co.*, 195 W. Va. 129, 135, 464 S.E.2d 771, 777 (1995).

**{¶44}** Based on case law in Ohio and numerous decisions from other state courts, including several supreme court opinions, we find that because the treble damages aspect of R.C. 901.51 and common law punitive damages both serve to deter the destruction of trees, recovery of both in the same timber theft case is an impermissible double recovery by Scioto. Therefore, we sustain Knauff's third assignment of error.

**{¶45}** Scioto sued and recovered compensatory damages that were trebled under R.C. 901.51 *and* punitive damages, which is an impermissible double recovery of damages for the same injury. Accordingly, this matter will be remanded to the trial court for Scioto to elect whether it will treble its compensatory damages under R.C. 901.50, or recover punitive damages.

ASSIGNMENT OF ERROR IV

**{¶46}** In his fourth assignment of error, Knauff asserts that the trial court erred when it struck his expert witness's valuation of the timber in this case. Knauff maintains that his expert witness, George Comstock, testified without objection, that the value of Scioto's timber was $4,798.45. He claims that a later

objection by Scioto was insufficient to cure its earlier waiver in failing to object, citing *Vicari v. Spiegel*, 989 A.2d 1277 (Pa. 2010).

**{¶47}** Knauff also argues that he should have been able to recall Comstock to qualify him as an expert having inadvertently forgotten to do so during his testimony. Knauff maintains that Comstock had just left the court when his counsel requested to recall Comstock, and there was no showing that permitting Comstock to be recalled would result in prejudice. Therefore, the court should have allowed Comstock to be recalled.

**{¶48}** Finally, Knauff maintains that Comstock's failure "to state 'to a reasonable degree of certainty' the amount of damages did not warrant the court striking his entire testimony." Knauff claims that the trial court admitted Comstock's "basis" for the damages. Therefore, the court can use that "basis" to calculate the value of Scioto's trees.

**{¶49}** In response, Scioto claims that the trial court did not err when it struck Mr. Comstock's valuation. Scioto asserts that Comstock was not properly certified as an expert witness during his testimony. Scioto also maintains that immediately after Comstock's testimony, its counsel objected to Comstock's testimony for his failure to express his opinions to a reasonable degree of certainty, so there was no waiver.

A.  Law

1.  Standard of Review

**{¶50}** "All rulings concerning the admission of expert testimony are within the sound discretion of the trial court. *Howard v. Wills*, 77 Ohio App. 3d 133,

141, 601 N.E.2d 515 (4th Dist.1991), citing *Frank v. Vulcan Materials Co.*, 55

Ohio App.3d 153, 155, 563 N.E.2d 339 (1988); *Fulton v. Aszman*, 4 Ohio App.3d

64, 66, 446 N.E.2d 803 (12th Dist.1982).  A trial court's decision to permit a

witness to be recalled is also within the trial court's discretion.  *See State v.*

*Jackson*, 9th Dist. Lorain No. 14CA010555, 2015-Ohio-2473, ¶ 59, citing *State v.*

*Anderson*, 191 Ohio App.3d 110, 2010-Ohio-6234, ¶ 9 (9th Dist.).

**{¶51}** Reviewing a trial court's decision for an abuse of discretion is a

"highly deferential standard" that "is limited to determining whether the trial court

acted unreasonably, arbitrarily, or unconscionably[.]"  *Lankford v. Weller*, 4th

Dist. Pickaway No. 21CA19, 2023-Ohio-430, ¶ 29, citing *Eitel's Towing Serv.,*

*Inc. v. D H Trucking, Inc.*, 4th Dist. Ross No. 21CA3753, 2022-Ohio-1639,  ¶ 8,

citing *Dunford v. Dunford,* 4th Dist. Gallia No. 13CA7, 13CA7, 2014-Ohio-617, ¶

3.  A trial court's decision is unreasonable if there is no sound reasoning process

that would support it.  *AAAA Ent., Inc. v. River Place Community Urban*

*Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

2.  Expert Witnesses

**{¶52}** "Experts are not required to give precise opinions, but an expert's

opinion is normally offered to a reasonable degree of certainty within the expert's

field."  *Shelly Materials, Inc. v. City of Streetsboro Plan. & Zoning Comm'n*, 158

Ohio St. 3d 476, 2019-Ohio-4499, 145 N.E.3d 246, ¶ 19, citing *State v. Beasley*,

153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 162.  "The expert

witness must express his or her opinion in terms of probability; otherwise the

testimony will be excluded as speculative."   *Nichols v. Hanzel*, 110 Ohio App. 3d

591, 600, 674 N.E.2d 1237, 1242 (4th Dist.1996), citing *Shumaker v. Oliver B.*

*Cannon & Sons, Inc.*, 28 Ohio St.3d 367, 369, 504 N.E.2d 44 (1986).

### B. Analysis

**{¶53}** At the conclusion of Comstock's testimony, Scioto's counsel

objected stating that

> the legal standard in the state of Ohio with regard to an
> expert is he has to testify to a reasonable degree of certainty within
> some industry that the opinions that he is offering is based upon
> that.  At no point in Mr. Comstock's testimony did he ever offer an
> opinion to a reasonable degree of certainty within an industry and
> therefore his opinion should be stricken.

**{¶54}** Knauff's counsel then requested the court to allow Comstock to be

recalled, which the court denied.  The court then sustained Scioto's objection

striking Comstock's testimony.  The court also stated: "Secondarily, I would note

that even had this testimony been admissible, he testified to the wrong standard

as to valuation.  The standard for damages in a case like this is the market value

at the time of the trespass or the conversion.  It is not the value of standing

timber that somebody would bid on the property."  The court struck Comstock's

testimony for both reasons.

**{¶55}** Knauff, who was the last witness, then testified.  After Knauff was

excused, both attorneys and the court started discussing the introduction of the

evidence, when the court interjected:

> Well, hang on.  Let's talk about that and I want to clarify my
> ruling as to the striking of the expert testimony.  As I have sat here
> and  - - wanting to clarify.  The testimony isn't stricken insofar as Mr.
> Comstock's testified about his opinion as to methodology for
> measuring trees, however, his ultimate opinion as to the value of the
> timber allegedly taken off this property is stricken, so that is out.  Now
> are you offering his expert report?

After arguments by both counsel, the court admitted the report, but not the "$5,078.45 total valuation given by Mr. Comstock because that was not properly testified to and not properly supported as an expert opinion."

**{¶56}** The trial court rejected Comstock testimony for two reasons. First Comstock did not testify that his opinion was within a reasonable degree of certainty. Second, Comstock used an incorrect method to value the timber. Specifically, he used the bid price paid only to cut standing timber.

**{¶57}** Recalling Comstock to the witness stand could have permitted counsel to ask the proper questions to qualify him as an expert witness. However, it would not have changed Comstock's valuation of the timber, which the trial court concluded was not a proper method of valuation. A conclusion that we affirmed in Knauff's first assignment of error. Therefore, even if we determined that the trial court's decision declining Knauff's request to recall Comstock was unreasonable, arbitrary, or unconscionable, it was ultimately harmless because Comstock's method valuation was incorrect. *See* Civ.R. 61 ("[N]o error * * * in any ruling * * * is grounds for * * * a disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice.")

**{¶58}** Therefore, we overrule Knauff's fourth assignment of error.

### III.    CONCLUSION

**{¶59}** Accordingly, we overrule Knauff's first, second, and fourth assignments of error. However, we sustain Knauff's third assignment of error and remand the matter to the trial court for Scioto to elect whether it wants to

recover treble damages under R.C. 901.50, or punitive damages.  Therefore, we affirm in part and reverse in part the trial court's judgment, and remand the matter to the trial court for further proceedings consistent with our decision.


**JUDGMENT AFFIRMED IN PART AND REVERSED IN PART AND CAUSE REMANDED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART AND THE CAUSE IS REMANDED and the appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J.:  Concur in Judgment and Opinion.


For the Court,


BY: _____
Kristy S. Wilkin, Judge


**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**